ANDERSON, Appellant and Cross–Appellee,

v.

**LORAIN COUNTY TITLE COMPANY, Appellee and Cross–Appellant.**

[Cite as *Anderson v. Lorain Cty. Title Co.* (1993), 88 Ohio App.3d 367.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005448.

Decided June 23, 1993.

*John D. Rodman* and *Louis J. Licata,* for appellant and cross-appellee.

*Thomas J. Smith* and *Mark A. Betleski,* for appellee and cross-appellant.

Cook, Presiding Judge.

Eric W. Anderson began working for Lorain County Title Company ("LCT") in April 1989 under a written, yearly, automatically renewable employment contract. In September, Anderson was involved in a work-related automobile accident and could not work until February 1990. LCT paid Anderson his base salary through this period and Anderson filed a workers' compensation claim for the medical expenses incurred because of the accident. LCT certified Anderson's application. Later, Anderson sought to amend his claim, which LCT did not contest.

After returning to work, Anderson continued to be employed by LCT until August 31, 1990. The reasons why and manner in which Anderson left LCT are disputed. Anderson claimed that in August he informed Terry Goode, vice-president in charge of marketing at LCT, that he had surgery scheduled for early September to remove devices placed in his leg following the automobile accident and would need more time off from work. LCT claimed that Anderson was not performing his job to its satisfaction, that Goode had repeatedly discussed the inadequacies with Anderson but that Anderson had not improved.

It is undisputed that on August 31, 1990, Goode called Anderson into his office and informed him that the employment relationship was not "working out as hoped" and that LCT wanted to end their business relationship. Goode asked

Anderson to sign a resignation letter in exchange for a net payment of $2,500 and the promise that LCT would not oppose Anderson's application for unemployment benefits. Anderson signed the resignation letter, accepted the payment and thereafter filed for and received unemployment compensation.

Anderson sued LCT, asserting three claims: (1) LCT breached the employment contract by wrongfully discharging Anderson; (2) LCT wrongfully discharged Anderson because of his pending workers' compensation claim in violation of R.C. 4123.90; and (3) LCT wrongfully discharged Anderson in violation of public policy, a cause of action derived from *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981. LCT moved for summary judgment and dismissal on all three claims, which the trial court denied. The court ordered a bifurcation of the trial, with a trial to the court of the R.C. 4123.90 claim following a jury trial on the other causes in Anderson's complaint. LCT then moved for reconsideration of its motion for summary judgment and dismissal as to the public-policy claim. The trial court granted LCT's motion for reconsideration and dismissed the public-policy claim.

The jury returned a verdict in favor of Anderson in the amount of $20,627.73 on the breach of contract claim and, after a bench trial, the court dismissed the R.C. 4123.90 claim. Following a hearing on the amount to be set off, the court deducted $14,108.97 from the jury's award.

Anderson appeals, asserting three assignments of error, and LCT cross-appeals, asserting four assignments of error.

### Assignment of Error I

"The trial court erred in dismissing appellant's second cause of action based on Ohio Revised Code Section 4123.90 because the jury already determined that appellee terminated appellant without good cause and appellant presented sufficient evidence to prove that appellee terminated him for filing and pursuing a workers' compensation claim."

■ With this assignment of error, Anderson claims that the jury decision on the contract claim prevented dismissal of the R.C. 4123.90 claim by application of collateral estoppel. Collateral estoppel is properly applied when four elements are present:

"(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action;

"(2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

"(3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and

"(4) The issue must have been identical to the issue involved in the prior suit." *Monahan v. Eagle Picher Indus., Inc.* (1984), 21 Ohio App.3d 179, 180–181, 21 OBR 191, 193, 486 N.E.2d 1165, 1168; see, also, *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552, 559; *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 74–75, 6 O.O.3d 274, 276–277, 369 N.E.2d 776, 777–778.

■ The burden is upon those seeking to invoke collateral estoppel to prove that all the elements of the doctrine apply. *Monahan,* 21 Ohio App.3d at 180, 21 OBR at 192, 486 N.E.2d at 1168. Collateral estoppel cannot be properly applied if the identical issue was not directly determined by, and essential to, the previous judgment. *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 201, 2 OBR 732, 739, 443 N.E.2d 978, 985.

■ In the breach of contract claim, the jury's answer to a specific interrogatory established that LCT did not have good cause to terminate Anderson. Anderson asserts that LCT defended the R.C. 4123.90 claim on the sole basis that LCT had good cause to terminate. We do not agree. The issue in the R.C. 4123.90 claim was not whether LCT had good cause to terminate Anderson, but rather whether LCT discharged Anderson for filing and pursuing a workers' compensation claim. While the jury found that the reasons LCT enunciated were not good cause to discharge Anderson, that finding is not equivalent to finding that LCT's reason for firing Anderson was retaliation for his pursuit of his workers' compensation claim.

Anderson argues that LCT's only defense to either claim was that it had just cause to fire Anderson. Therefore, he contends, since the jury ruled in Anderson's favor on that defense, no viable defense was offered to the retaliatory discharge case. LCT, however, presented different evidence at the trial of the R.C. 4123.90 claim than at the trial for the breach of contract. LCT presented two additional witnesses and recalled Goode to the stand at the trial of the R.C. 4123.90 claim. It was established that (1) Anderson filed his workers' compensation claim in December 1989, which LCT certified; (2) Anderson amended his claim, which LCT did not contest; and (3) Anderson filed a second application for benefits after he resigned, which LCT certified. It is this difference in the focus of the evidence and of the proof that demonstrates the dissimilarity of the issues in these two causes of action and the inapplicability of collateral estoppel.

Anderson's first assignment of error is overruled.

## Assignment of Error II

"The trial court erred in granting appellee's motion for reconsideration to dismiss appellant's third cause of action for wrongful discharge in violation of

Ohio public policy because the trial court erroneously determined that appellant cannot assert this cause of action if he already has a remedy under Ohio Revised Code Section 4123.90."

■ With this assignment of error, Anderson claims that the Ohio Supreme Court's decision in *Greeley, supra,* establishes a new, separate cause of action in tort for wrongful discharge in violation of public policy. LCT argues that *Greeley* provides a public-policy claim only when the violated statute does not provide a civil remedy. We agree with LCT.

■ The syllabus of *Greeley* generally states that public policy warrants a cause of action for wrongful discharge when an employee is discharged for a reason which is prohibited by statute. *Id.* at paragraphs one and three of the syllabus. The Ohio Supreme Court, in two later decisions, however, has limited its *Greeley* decision. In *Tulloh v. Goodyear Atomic Corp.* (1992), 62 Ohio St.3d 541, 545, 584 N.E.2d 729, 733, the Supreme Court stated: "In *Greeley,* we held that a civil remedy is available for an employer's discharge of an employee in violation of R.C. 3113.213(D)." The Supreme Court further explained its *Greeley* decision in *Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities* (1992), 64 Ohio St.3d 252, 261, 594 N.E.2d 959, 966, stating:

"The narrow issue in that case was whether an employee discharged in violation of R.C. 3113.213(D), prohibiting an employer from discharging or disciplining an employee on the basis of wage withholding order, could maintain a wrongful discharge action where the statute did not expressly authorize such an action. * * * Reasoning that the legislature could not have intended to leave an employee discharged in violation of such a statute without an effective remedy, a majority of this court held 'that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute.' 49 Ohio St.3d at 234, 551 N.E.2d at 986."

R.C. 4123.90 provides the employee a civil remedy for its violation; therefore, if Anderson's view of *Greeley* is correct, he would have two civil remedies arising from the same violation of the statute. We analyze *Greeley, Tulloh,* and *Provens* as providing no separate cause of action to Anderson since R.C. 4123.90 provides an effective remedy for violation of public policy favoring workers' compensation remedies. The trial court did not err in dismissing that cause of action.

Anderson's second assignment of error is overruled.

## Assignment of Error III

"The trial court erred in its determination of the amounts set off against the jury's verdict."

With this assignment of error Anderson presents two issues concerning the setoffs from the jury verdict: (1) whether the court properly deducted the payment LCT made to Anderson upon his signing the resignation letter; and (2) the proper amount of unemployment compensation that should have been set off.

■ In a breach of contract for wrongful discharge action, the measure of damages is the difference between the wages due under the contract and the wages the employee earned or could have earned in subsequent employment. *Worrell v. Multipress, Inc.* (1989), 45 Ohio St.3d 241, 246, 543 N.E.2d 1277, 1282; *Mers v. Dispatch Printing Co.* (1988), 39 Ohio App.3d 99, 104, 529 N.E.2d 958, 964. The wrongfully discharged employees must be restored to the economic position in which they would have been but for the discharge.

■ First, Anderson claims that the $2,500 he received for signing the resignation letter should not have been deducted because he earned that benefit during his employment. We do not agree. The only support Anderson offers for this proposition is *Bolling v. Clevepak Corp.* (1984), 20 Ohio App.3d 113, 20 OBR 146, 484 N.E.2d 1367, and *Cervelli v. Health Ent. of Am., Inc.* (Feb. 11, 1991), Trumbull App. No. 89-T-4329, unreported, 1991 WL 16545. In *Bolling*, the employer had a company policy manual which provided its employees with severance benefits at a certain amount for each year worked and the court held that such severance pay was accrued or earned during the course of employment and could not be divested. *Bolling, supra*, 20 Ohio App.3d at 116-121, 20 OBR at 148-153, 484 N.E.2d at 1371-1375. The court in *Cervelli* merely relied upon *Bolling* without stating enough facts to allow the reader to discern under what circumstances the severance pay was given. *Cervelli, supra*.

In this case, neither LCT's policy manual nor Anderson's employment contract imposed an obligation on LCT to pay severance pay. The payment was made at the time Anderson signed the resignation letter in order to induce his resignation and as such was not earned during his employment, but was rather a discretionary payment. The trial court did not err in setting off the amount of this payment.

■ Anderson next argues that the trial court erred in its computation of the amount of unemployment that was set off. The trial court added the stipulated amount of unemployment compensation and workers' compensation benefits to obtain the amount of unemployment benefits to which Anderson was entitled and set off that amount from the jury award. We find no error with the way the trial court arrived at the amount to be deducted.

Even if the court erred in the way that it arrived at the amount of unemployment benefits to which Anderson was entitled, it was not prejudicial error because the court did not deduct the workers' compensation from the jury award.

Anderson offers no argument as to why the workers' compensation should not have been deducted and the net effect of the trial court's ruling is the same whether the court factors in the unemployment benefits to which Anderson was entitled or whether the court deducts the actual unemployment benefits and the actual workers' compensation.

Anderson's third assignment of error is overruled.

### Cross–Assignment of Error I

"The trial court erred in denying Lorain County Title's motion for summary judgment because the evidence submitted to the court on that motion established that appellant had not been discharged."

While summary judgment proceedings serve an important role in trial management, critical limits do exist upon their application. "A summary judgment precludes a jury's consideration of a case and should, therefore, be used sparingly, only when reasonable minds can come to but one conclusion." *Shaw v. Cent. Oil Asphalt Corp.* (1981), 5 Ohio App.3d 42, 44, 5 OBR 45, 47, 449 N.E.2d 3, 6.

LCT contends that the evidence submitted for consideration of the motion for summary judgment established that Anderson had resigned his position in consideration of additional compensation and thus no discharge occurred upon which to base a claim of wrongful discharge. LCT argues that a voluntary resignation occurs if an employee resigns after being offered additional consideration, citing *Ackerman v. Diamond Shamrock Corp.* (C.A.6, 1982), 670 F.2d 66; *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807. *Ackerman* and *Barker* are not dispositive of this issue.

In *Barker*, the plaintiff was given three options: (1) layoff; (2) termination with severance pay; or (3) transfer to a different job with a reduced salary. In this case, Goode stated that if Anderson did not sign the resignation letter he would be terminated. Thus, Anderson's choice was termination with a payment or termination without payment.

In *Ackerman*, the plaintiff signed an early retirement agreement of his own free will after having a month to consider the agreement, which benefitted him by over $100,000. The court found that the plaintiff made a conscious, well-informed, voluntary decision. In this case, Anderson was called into Goode's office, offered a payment to induce his resignation but if he failed to resign, LCT was ready to discharge him. Construing the evidence submitted with the motion for summary judgment in a light most favorable to Anderson, the trial court did not err in finding that a genuine issue of material fact existed as to whether Anderson freely resigned or whether he was constructively discharged.

LCT's first cross-assignment of error is overruled.

### Cross–Assignment of Error II

"The trial court erred to the prejudice of Lorain County Title in admitting the testimony of three witnesses identified by appellant just prior to trial, and not allowing a continuance of the trial, despite the fact that appellant had failed to identify the three individuals as potential witnesses in previous responses to discovery."

During discovery, LCT requested disclosure of all witnesses which Anderson intended to call at trial. It is uncontroverted that Anderson disclosed three witnesses, Molly Yost, Liz Cervone and Jenny Kerecz, for the first time the Friday before the Monday trial. LCT asserts that the trial court erred in allowing these three witnesses to testify and not granting a continuance.

The admission of evidence during trial is within the sound discretion of the trial judge and will not be reversed absent an abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. The exclusion of reliable and probative evidence is a severe sanction. *Angelo v. Stack* (Mar. 27, 1991), Lorain App. No. 4847, unreported, 1991 WL 43142. In *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248, the Supreme Court discussed excluding testimony of an undisclosed witness as a sanction under Civ.R. 37. *Id.* at 84–87, 19 OBR at 124–126, 482 N.E.2d at 1249–1251. The court upheld the sanction when the failure to disclose witnesses caused unfair surprise with resulting prejudice to the opposing party. *Id.*

In the present case, contrary to LCT's assertion, we do not agree that their case was prejudiced by the three witnesses' testimony. The trial court allowed LCT to interview all three witnesses before they testified. Each of them testified that she got along with Anderson, that he did not exhibit the type of behavior that LCT was now accusing him of and that she knew LCT employees who did not like him. Their testimony was essentially repetitive of Kim Manzol's. Further, LCT effectively cross-examined each witness by pointing out that two of the three witnesses had limited dealings with Anderson in the office, that those two spent little time actually at LCT's office, and that the witnesses were not Anderson's supervisor. LCT elicited from the other witness that she had heard Anderson tell off-color jokes in the office and that she would not hire him as a salesperson. Thus, the testimony that the three witnesses provided was not a key issue in this case. We do not find that allowing these witnesses to testify under these circumstances was inconsistent with substantial justice. Civ.R. 61; Evid.R. 103(A). We, therefore, hold that the trial court did not abuse its discretion in allowing the three witnesses to testify. Although we find no prejudicial error under the specific circumstances of this trial, the deliberate untimely disclosure of witnesses prejudicial to the appellant ought to, as in

*Huffman,* be excluded. If not, the verdict favorable to the offending party may be reversed.

LCT's second cross-assignment of error is overruled.

### Cross–Assignment of Error III

"The verdict rendered by the jury on behalf of appellant was against the manifest weight of the evidence, since the manifest weight of the evidence establishes that appellant was not discharged, that Lorain County Title had just cause to ask appellant to resign, and that appellant had failed to mitigate his damages as required by law."

■ With this assignment of error, LCT argues that the jury's findings that Anderson was discharged without good cause and that he properly mitigated his damages are against the manifest weight of the evidence. We do not agree. If the trial court's judgment is supported by some competent, credible evidence, the court of appeals will not reverse it as being against the manifest weight of the evidence. *Kinney v. Mathias* (1984), 10 Ohio St.3d 72, 73–74, 10 OBR 361, 361–362, 461 N.E.2d 901, 902–903.

■ In its discussion of Anderson's discharge without good cause, LCT contends that the quantity and quality of its evidence outweighed that of Anderson. At trial, LCT asserted many serious allegations concerning Anderson's performance, including sexual harassment, alcohol abuse and indecisiveness. The evidence also showed that these problems with Anderson existed prior to the renewal date of Anderson's employment contract and that many of the problems either were not addressed with Anderson or were condoned by LCT. Therefore, we cannot say that the jury's finding that the termination was without cause was against the manifest weight of the evidence.

■ LCT also claims that the jury's finding that Anderson properly mitigated his damages was against the manifest weight of the evidence because Anderson did not follow up on certain opportunities of employment. While Anderson did admit that he did not follow through on certain employment leads, the evidence did not show that the employment was comparable to his job with LCT or that Anderson rejected any specific job offer. Further, LCT did not release Anderson from the noncompetition clause in his contract. Given these facts, we cannot say that the jury's finding was against the manifest weight of the evidence.

LCT's third cross-assignment of error is overruled.

### Cross–Assignment of Error IV

"The trial court erred in granting appellant prejudgment interest on his verdict."

▮▮▮▮ The decision whether to award prejudgment interest is within the sound discretion of the trial court. *Huffman, supra,* 19 Ohio St.3d at 87, 19 OBR at 126, 482 N.E.2d at 1251. This court has held that a trial court should award prejudgment interest when the amount of the debt is clear, and the only question for the court is whether plaintiff is entitled to recovery. *Mahon–Evans Realty, Inc. v. Spike* (1986), 33 Ohio App.3d 268, 270, 515 N.E.2d 953, 955.

▮▮▮ LCT claims that the amount of Anderson's claim was rendered unliquidated by the probability of certain setoffs. We do not agree. The amount owed under the employment contract was readily calculable and, in fact, stipulated to by the parties. The existence of setoffs does not render the liquidated debt unliquidated. See *L.A. Gross & Son, Inc. v. Parisi* (1990), 66 Ohio App.3d 697, 700, 586 N.E.2d 142, 144. Thus, we find that the trial court correctly awarded prejudgment interest from the date of the natural expiration of the employment contract on the amount owed after the setoffs had been applied.

LCT's fourth cross-assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, J., concurs.

DICKINSON, J., concurs separately.

DICKINSON, Judge, concurring.

I concur with the result reached by the majority and, except as noted below, with its reasoning. I write separately because, although Anderson argued in support of Assignment of Error I that the trial court violated the doctrine of collateral estoppel by dismissing his second cause of action, I do not believe the circumstances of this case implicate collateral estoppel and would overrule his assignment of error on that basis.

I do not disagree with the majority's analysis and determination that there was a distinction between the jury's finding (in regard to Anderson's breach of contract claim) that LCT did not have good cause to terminate Anderson and LCT's position on Anderson's second cause of action that it had not terminated him for filing and pursuing his workers' compensation claim. If no such distinction had existed, maybe it would have been error for the trial court to dismiss plaintiff's second cause of action. If so, however, that error would not have been because of the doctrine of collateral estoppel. A prerequisite for collateral estoppel is that "[t]here was a final judgment on the merits in [a] previous case * * *." *Monahan v. Eagle Picher Indus., Inc.* (1984), 21 Ohio App.3d 179, 180, 21 OBR 191, 192, 486 N.E.2d 1165, 1167. The jury's finding

relied upon by Anderson was in the same case as the trial court's order dismissing plaintiff's second cause of action and, at the time Anderson sought to have the trial court apply collateral estoppel, no final judgment had been entered on the merits of the case. Collateral estoppel, therefore, was not implicated.