DECISION AND JOURNAL ENTRY
Danny Webber appeals his conviction following a jury trial in the Medina County Court of Common Pleas. This court affirms.
 I.
At approximately noon on April 23, 1999, Medina City police officers arrived at the Abbeyville Road apartment that Webber shared with his girlfriend Sherry Mayak to investigate a reported domestic violence incident. When the police knocked at the door, Sherry told them that Webber was in the kitchen. Police approached the kitchen, but Webber left. Police then ordered Webber to stop, but he fled. A moment later, Sherry's automobile, a red car with temporary tags, was seen leaving the apartment complex. One officer radioed the description of Webber and the departing car to other responding officers. Responding officers saw a man matching Webber's description in the red car, and they followed in pursuit. In eluding the police, Webber allegedly drove at speeds of up to fifty miles per hour in the downtown area of Medina, where the speed limit is twenty-five miles per hour. When Webber proceeded to drive through stop signs and red lights, the commanding officer called off the pursuit for safety reasons.
On Sunday, April 25, 1999, one of the neighbors in the Abbeyville Road apartments saw Webber at his apartment, and called the police. When police arrived to apprehend Webber, they saw Webber outside the apartment. He ran inside, and a policeman followed. The policeman stopped in the doorway of the apartment, blocking Webber's exit. Webber tackled the officer, and a struggle ensued between Webber and two officers in the lawn area outside Webber's apartment.
Several neighbors at an outdoor barbecue began to watch the altercation. Officers Joe Ahern and Todd Grice tried to restrain Webber, and at one point Webber had his hand on Ahern's gun. Webber allegedly grabbed the gun which was secure in the holster, and pulled on the gun three times. Ahern shouted, "He's got my gun." The neighbors, upon hearing this, retreated indoors with their children. During the altercation, Webber sprained Grice's finger. After approximately ten minutes of struggling, the police were able to subdue Webber.
Webber was indicted for: failure to comply with an order of a police officer, a fourth degree felony in violation of R.C.2921.331(B) and (C)(3); felonious assault, a first degree felony in violation of R.C. 2903.11; and assault, a fourth degree felony in violation of R.C. 2903.13(A)(1) and (C)(3). At the jury trial, Sherry Mayak, several neighbors, and the police officers involved in the above incidents testified for the prosecution. Webber was the sole defense witness. Webber admitted that the police had accurately described the eluding incident and the simple assault on Officer Grice. However, Webber disputed the felonious assault charge, claiming that he neither touched the officer's gun, nor intended to use the weapon to harm anyone.
Two neighbors testified that during the April 25 struggle they saw Webber put his hand on Ahern's gun, which was still in the holster. Ahern also testified that Webber grabbed and pulled on his gun, which at all times remained in the holster. Ahern stated that the holster had three locking mechanisms, requiring a particular movement to get the gun out of the holster. Ahern testified that he always carries his gun with the safety off, so that if needed he can simply pull the gun out and use it. Ahern testified that he was fearful that Webber would extricate the gun and use it. Ahern testified that once Webber grabbed the gun, Ahern shouted out, "He's got my gun." Ahern made that statement hoping that someone would call for backup. At no time did Webber remove the gun from the holster.
The jury convicted Webber on all counts and the judge sentenced him to consecutive sentences of ten years for felonious assault and one and one half years each for assault and for failure to comply with the police order. Webber filed the instant appeal, assigning four errors.
 II. ASSIGNMENT OF ERROR NO. 1
THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF DEFENDANT-APPELLANT'S OTHER CRIMES, WRONGS, OR ACTS IN VIOLATION OF EVIDENCE RULE 404(B) AND O.R.C. 2945.59.
Webber claims that the trial court erroneously allowed the prosecution to question him about his prior criminal history, over defense counsel's objections.
First, we note that "the trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion which has materially prejudiced the objecting party." Burns v. Krishnan (Jan. 28, 1998), Lorain App. No. 96CA006650, unreported, at 6, citingAnderson v. Lorain Cty. Title Co. (1993), 88 Ohio App.3d 367,376, and Barbeck v. Twinsburg Twp. (1992), 73 Ohio App.3d 587,592. An abuse of discretion is more than mere error. It must involve "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Evid.R. 404(B) states that
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 In the instant case it was not the prosecution, but Webber himself, who introduced the evidence of Webber's prior criminal convictions. Whenever a defendant testifies, he may be impeached by evidence of his prior criminal convictions, provided the evidence is more probative than prejudicial. See Evid.R. 609(A)(2); R.C. 2945.59; State v. Schaim (1992), 65 Ohio St.3d 51, 60, fn. 7; State v. Lane (1997), 118 Ohio App.3d 230, 234.
After Webber testified to only a few of his numerous convictions, the prosecution cross-examined Webber at length about the remaining criminal convictions. Such questioning by the prosecution on cross-examination was proper to impeach Webber, who presented a redacted version of his long criminal history, and to establish Webber's motive to avoid capture by the police at all costs because Webber was on probation for the earlier crime. Webber stated in direct examination that he was frequently subjected to unwarranted police harassment, and when the police approached him on April 25, he was just an innocent individual who wanted to avoid police harassment. The prosecution questioned Webber about the most recent crime in order to establish that Webber's motive for committing felonious assault was to avoid apprehension at all cost.
Webber urges this court to determine that the prejudicial effect of the evidence of prior convictions outweighs its probative value. We decline to do so. Evidence that would tend to prove or disprove whether Webber was just trying to avoid an unpleasant encounter, as he claimed, or was trying to avoid a certain prison term at any cost, is highly probative. See Statev. Gumm (1995), 73 Ohio St.3d 413, 426, citing State v. Flonnory
(1972), 31 Ohio St.2d 124, 126. This court cannot conclude that the trial court abused its discretion in permitting evidence of Webber's prior convictions.
Webber's first assignment of error is overruled.
 III. ASSIGNMENT OF ERROR NO. 2
THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF DEFENDANT-APPELLANT'S PRIOR ALLEGED UNCHARGED MISCONDUCTS [sic] AFTER TRIAL COURT GRANTED COUNSEL FOR DEFENDANT-APPELLANT'S PRE-TRIAL MOTION IN LIMINE AND THEN FAILED TO GRANT DEFENDANT-APPELLANT A SECOND HEARING DURING THE TRIAL TO DETERMINE ADMISSIBILITY.
Defense counsel obtained an in limine instruction which prohibited the prosecution from introducing evidence of Webber's alleged domestic violence incident which prompted the police visit to Webber's home on April 23. Defense counsel explained that the in limine motion was addressed to a concern that the prosecution intended to call some neighbors to testify about alleged domestic violence generally. The prosecutor stated he had no intention of eliciting such testimony. Defense counsel then advised the court that these witnesses might inadvertently mention such alleged offenses. The prosecutor advised that he had counseled the state's witnesses not to mention "other acts 
that are not relevant to this proceeding." The prosecutor went on to say that there are allegations of Webber's past violence toward women, but "unless that becomes relevant to this case, that will not be brought up." The court then granted the motion in limine, with the understanding that the state's witnesses would not mention any prior bad acts by Webber.
When Webber himself took the stand, he portrayed himself as an innocent victim of frequent police harassment. On cross-examination, the prosecutor asked Webber why he did not stop in response to the direct order of police on April 23. The prosecution confronted Webber about his status as a parolee. Then the following exchange took place:
 So it's your policy that whenever you see the police, to flee from them?
I suppose so.
 Q. I mean, if you hadn't done anything wrong, why are you running from the police?
 A. I I don't involve the police with my life. I have no reason to have them in my life.
 Q. I bet you don't. But other people do when you assault your live-in girlfriend and they call the police right?
 Defense counsel objected to the remark, and the court sustained the objection. Then defense counsel asked for a side bar, but the court refused. The prosecution continued to ask Webber why the police were at his home on April 23, and Webber stated he didn't know, he just left to avoid the police. The prosecutor then asked whether the police were there in response to neighbors' reports that he was beating up Sherry. Again defense counsel objected, but the judge overruled the objection.
Webber now argues that the judge should have held another hearing, outside the presence of the jury, to determine the admissibility of the evidence subsequent to the motion in limine. This court disagrees. The scope of the motion in limine was limited to testimony by prosecution witnesses, whereas the disputed questioning took place during Webber's testimony. Furthermore, there is no requirement that a subsequent hearing be held on the liminal motion once the trial is under way. The Ohio Supreme Court has stated that a "motion in limine is tentative and precautionary in nature, reflecting the court's anticipatory treatment of an evidentiary issue at trial. In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial." Defiance v.Kretz (1991), 60 Ohio St.3d 1, 4. The court was not obliged to hold a separate hearing to further determine whether the testimony was admissible in the context of the trial.
Thus, our review is limited to whether the trial court incorrectly overruled plaintiff's objections at trial. Pena v.Northeast Ohio Emergency Affiliates, Inc. (1995), 108 Ohio App.3d 96,108, citing Regec v. Johnson (Mar. 31, 1995), Summit App. No. 15838, unreported, at 6. As already noted in our discussion of evidence of prior convictions, evidence of other wrongs may be admitted for purposes of establishing motive, Evid.R. 404(B), and to impeach a criminal defendant who elects to take the stand, Evid.R. 609(A)(2). This court cannot conclude that the trial court abused its discretion in overruling Webber's objection to the prosecution's inquiry about the alleged domestic violence incident.
Webber's third assignment of error is overruled.
 IV. ASSIGNMENT OF ERROR NO. 3
THE VERDICT IS IN ERROR WHERE THE DEFENDANT-APPELLANT FAILED TO RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE TRIAL.
Webber asserts that his trial counsel was ineffective because counsel failed to object to certain hearsay statements. To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and prejudice resulting from that deficient performance. Statev. Radcliff (May 3, 2000), Summit App. No. 19704, unreported, at 4-5, citing Strickland v. Washington (1984), 466 U.S. 668,687, 80 L.Ed.2d 674, 693. To establish prejudice, the defendant must demonstrate that it is reasonably probable that the professionally unreasonable performance caused him to lose what he otherwise would have won. Radcliffe, supra,
at 5, citing United States v. Morrow (C.A.6 1992),977 F.2d 222, 229, certiorari denied (1993), 508 U.S. 975,125 L.Ed.2d 668.
Webber's appellate brief points to pages at which the prejudicial hearsay statements were made without objection. However, Webber fails to point out the objectionable hearsay statements or the prejudice that resulted from counsel's failure to object. Some pages do not even contain hearsay, that is, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In regard to other statements, the declarants themselves testified to the substantive matters involved.
The most objectionable statement was Ahern's statement that "He's got my gun." Numerous witnesses testified that they heard Ahern make that statement. However, Ahern himself testified that at no time did Webber actually have possession or control of the gun. Every other witness was asked if he or she saw Webber actually in possession of the gun, and each witness testified in the negative.
Although the better practice would be for counsel to object to hearsay statements, a review of the record establishes that there was clear evidence that Webber, in fact, did not have possession and control of Ahern's gun. Webber's third assignment of error is overruled.
 V. ASSIGNMENT OF ERROR NO. 4
THE JUDGMENT OF CONVICTION IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
Webber challenges the jury verdict as against the manifest weight of the evidence.
A review of the weight of the evidence determines whether the state has met its burden of persuasion. State v. Angle (June 2, 1999), Medina App. No. 2875-M, unreported, at 7. When an appellate court reviews the weight of the evidence
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. State v. Ali (Apr. 28, 1999), Summit App. No. 19119, unreported, at 9.
Webber admitted on the witness stand that the officers accurately testified that Webber eluded the police subsequent to a police order. This court finds that the jury did not lose its way in determining that Webber committed the offense of failure to comply with the order of a police officer in violation of R.C.2921.331(B) and (C). R.C. 2921.331(B) provides that: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Where the operation of the motor vehicle created a substantial risk of serious physical harm to persons or property, the offense is a third degree felony. R.C. 2921.331(C)(5)(a)(2).
Webber also admitted he struggled with the police and injured Officer Grice's finger. Thus, we cannot conclude that the jury lost its way in rendering a verdict of guilty on the assault charge, finding that Webber knowingly caused physical harm to Officer Grice, a peace officer. R.C. 2901.13(A) and (C)(3). To find that Webber acted knowingly, the jury was required to believe that, regardless of his purpose, Webber was "aware that his conduct [would] probably cause a certain result or [would] probably be of a certain nature." R.C. 2901.22(B). It was reasonable for the jury to conclude that when Webber struggled violently with the police, he was aware that physical injury could result.
However, as to the charge of felonious assault, the majority of this panel finds that Webber's assignment of error is well-taken, and that the verdict was against the manifest weight of the evidence. R.C. 2903.11(A) provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Criminal attempt is defined in R.C. 2923.02, which states "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).
The Ohio Supreme Court has reviewed convictions for felonious assault in similar circumstances, and has concluded that "[t]he act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2)." State v. Green
(1991), 58 Ohio St.3d 239, syllabus, explaining and adopting Statev. Brooks (1989), 44 Ohio St.3d 185. However, "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2)." Brooks, 44 Ohio St.3d at syllabus. Officer Ahern and several other eyewitnesses testified that Webber had his hand on Ahern's gun. Ahern testified that Webber grabbed the gun while it was in the holster and pulled on it three times. Ahern testified that he was afraid that Webber would gain control of the gun and perhaps shoot him. However, Ahern testified that the gun was always in the holster, that it took a specific movement to extricate the gun from the holster because of the holster's three locking mechanisms, and that it was impossible for Webber to discharge the gun while it was still in the holster. There was no testimony that Webber actually had control of the gun, nor was there testimony that Webber made threats to shoot the gun.
The majority of this court finds that the guilty verdict for felonious assault was against the manifest weight of the evidence, and that the jury clearly lost its way when it determined that Webber attempted to cause physical harm by means of a deadly weapon. Webber's fourth assignment of error is well-taken and it is sustained.
However, Section 3(B)(3), Article IV of the Ohio Constitution prohibits reversal of a jury verdict on the weight of the evidence unless all three appellate judges agree that the verdict is against the manifest weight of the evidence. See State v.Thompkins (1997), 78 Ohio St.3d 380, paragraph four of the syllabus; State v. McCalister (Jan. 10, 1996), Summit App. No. 17088, unreported, at 28. Consequently, the judgment of conviction on the felonious assault charge must stand.
 VI.
We have overruled three of Webber's four assignments of error. The fourth assignment of error is well-taken. However, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
SLABY, J., CONCURS