DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Linda Urda, appeals from the judgment of the Summit County Court of Common Pleas which granted summary judgment to Appellees, Buckingham, Doolittle Burroughs, LLP, and Robert Briggs, on each of the counts in Appellant's complaint. This Court affirms.
 I. {¶ 2} This appeal was previously dismissed due to the lack of a final, appealable order. See Urda v. Buckingham, Doolittle Burroughs,LLP, 9th Dist. No. 22547, 2005-Ohio-5949. For ease of analysis, this Court restates the factual background herein.
 {¶ 3} Appellant is a professional, non-attorney with training and experience in nonprofit programming and management. In 1992, Appellees hired her as a part-time at-will employee to perform research, writing and grant evaluation for the GAR Foundation trust ("GAR"), with which Appellees had significant managerial involvement. In 1996, Appellee Robert Briggs appointed her as the Associate Director of GAR. In that capacity, Appellant was responsible for supervising GAR staff, developing proactive initiatives and grantmaking. Appellee Briggs became the Executive Director and co-trustee of GAR in 1994. He also served as the President and Chairman of the Board of Managers of Appellee Buckingham, Doolittle Burroughs, LLP ("BDB") from 1990 until 2000. From 1995 until 2000, Appellant assumed a significant role in the administration and management of GAR matters for Appellees.
 {¶ 4} In 2000, Appellee Briggs assumed a more active role in the management and administration of GAR. A tension arose between Appellant and Appellee Briggs in regard to their roles in relation to GAR. In June 2001, Appellee Briggs removed Appellant as the Associate Director of GAR and reduced her responsibilities and supervisory role in relation to GAR staff. Appellant alleged that she further did not receive her traditional end-of-year raise and that she received a smaller bonus than in previous years. Appellant described her new role as a demotion, while Appellees described it as a reassignment. In April 2002, the day after Appellant participated in a GAR staff meeting, Appellees terminated Appellant's employment with BDB.
 {¶ 5} On November 15, 2002, Appellant filed a complaint alleging retaliation in violation of public policy in count one, violation of R.C. 4113.52 in count two, breach of contract in count three, promissory estoppel in count four, fraudulent misrepresentation in count five, and age discrimination in count six. Appellees filed a motion for summary judgment, Appellant responded in opposition and Appellees replied. The trial court granted Appellees' motion for summary judgment. Appellant timely appealed, and this Court dismissed the matter for lack of a final appealable order. On remand, the trial court entered judgment on the remaining count in the complaint. Appellant now appeals for a second time, raising two assignments of error for review.
 II. {¶ 6} As both of Appellant's assignments of error relate to the trial court's grant of summary judgment, this Court first details our standard of review.
 {¶ 7} An appellate court reviews the award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. In doing so, this Court views the facts presented by the moving party in a light most favorable to the non-moving party and resolve any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 8} Pursuant to Civ. R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated;
 (2)the moving party is entitled to judgment as a matter of law; and
 (3)it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. "Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ. R. 56(C), Civ. R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings." Elsass v. Crockett, 9th Dist. No. 22282, 2005-Ohio-2142, at ¶ 15. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,449.
 ASSIGNMENT OF ERROR I
"SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED ON THE PUBLIC POLICY TORT WHERE URDA PRESENTED EVIDENCE OF A PRIMA FACIE CASE OF RETALIATION IN VIOLATION OF PUBLIC POLICY WHEN SHE WAS DEMOTED AND FIRED." (emphasis sic.)
 {¶ 9} In her first assignment of error, Appellant argues that the trial court erred in granting summary judgment on her public policy tort. Specifically, Appellant asserts that genuine issues of material fact remain surrounding her claim. This Court disagrees.
 {¶ 10} In Greeley v. Miami Valley Maint. Constrs., Inc. (1990),49 Ohio St.3d 228, the Ohio Supreme Court recognized a public policy exception to the employment at will doctrine and held that an employee could maintain a private cause of action against an employer when the employee is discharged or disciplined for a reason which is prohibited by statute. Id. at paragraph one of the syllabus. The Greeley Court held that "[i]n Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort." Id. at paragraph three of the syllabus. While Greeley dealt with a statutory based claim, the court found that a private cause of action for wrongful discharge need not be premised upon a violation of a specific statute. Id. at 235.
 {¶ 11} The Ohio Supreme Court explained Greeley in Tulloh v. GoodyearAtomic Corp. (1992), 62 Ohio St.3d 541 (overruled by Painter v.Graley (1994), 70 Ohio St.3d 377). The Tulloh Court limited its previous exception to the employee at will doctrine and held that "[a]bsent statutory authority, there is no common-law basis in tort for a wrongful discharge claim." Tulloh, 62 Ohio St.3d at 546.
 {¶ 12} In Anderson v. Lorain Cty. Title Co. (1993),88 Ohio App.3d 367, this Court analyzed the Ohio Supreme Court decisions ofGreeley, Tulloh, and Provens v. Stark Cty. Bd. of Mental Retardation Developmental Disabilities (1992), 64 Ohio St.3d 252, and found that a public policy claim is available only when a violated statute does not provide an effective remedy. Anderson, 88 Ohio App.3d at 373.
 {¶ 13} Subsequently, in Painter, the Ohio Supreme Court revisited its exception to the employment at will doctrine. The Painter Court overruled the Tulloh decision. Painter, 70 Ohio St.3d at paragraph three of the syllabus. In so doing, the Court re-affirmed Greeley and held "that an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a `sufficiently clear public policy.'" Id. at 384.
 {¶ 14} In 2002, the Ohio Supreme Court was again presented with the issue of statutory claims and public policy claims. See Wiles v. MedinaAuto Parts, 96 Ohio St.3d 240, 2002-Ohio-3994. In Wiles, an employee alleged that his employer constructively and wrongfully discharged him in retaliation for the exercise of his rights under the Family and Medical Leave Act ("FMLA"). Rather than bring the statutory claim, the employee filed suit under the common law, alleging that his discharge violated public policy. After reviewing the remedies under the FMLA as well as a public policy cause of action, the Ohio Supreme Court determined that the public policy claim was "unnecessary to vindicate the policy goals of the FMLA" and declined to recognize such a claim. Id. at ¶ 1.
 {¶ 15} In determining whether Wiles could maintain a public policy claim, the court relied on the standard established in Collins v.Rizkana (1995), 73 Ohio St.3d 65. In Collins, the Ohio Supreme Court adopted a standard for Ohio common law claims for wrongful termination in violation of public policy. Id. at 69-70. To establish a public policy wrongful termination claim the following elements must be present:
 "1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 "2. That dismissing employees under circumstances like those involved in the plaintiffs dismissal would jeopardize the public policy (the jeopardy element).
 "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 "4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." (Emphasis sic.) (Citations and quotations omitted). Id.
Collins also explained that the clarity and jeopardy elements, "both of which involve relatively pure law and policy questions, are questions of law to be determined by the court." (Citations and quotations omitted.) Id. at 70. The factual elements of causation and overriding justification, on the other hand, are generally to be decided by a jury. Id.
 {¶ 16} The Wiles Court then considered the jeopardy element and explained that "[a]n analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common law wrongful discharge claim." (Citation omitted.) Id. at ¶ 15. The Court explained that:
 "[T]here is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests * * * [because] the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct." (Citations omitted). Id. at ¶ 15.
 {¶ 17} On appeal, Appellant asserts that she identified numerous public policies which were placed in jeopardy when she was terminated. We disagree.
Tax Code
 {¶ 18} Appellant argues that Appellees were in violation of the tax code and that she was fired for asserting such a fact. Initially, this Court notes that Appellant has not identified a precise public policy contained in the tax code upon which she is relying. Assuming the clarity element was met, however, Appellant's claim still must fail.
 {¶ 19} Appellant may not rely upon violations of the tax code because if, as alleged by Appellant, Appellees were violating the tax code, a criminal offense, Appellant was obligated to follow the Whistleblower statute to preserve her cause of action. See Davidson v. BP America,Inc. (1997), 125 Ohio App.3d 643, 650 (finding that allegations of violations of the tax code fall within the scope of R.C. 4113.52).
 "[T]he public policy embodied in the Whistleblower Statute is limited. By imposing strict and detailed requirements on certain whistleblowers and restricting the statute's applicability to a narrow set of circumstances, the legislature clearly intended to encourage whistleblowing only to the extent that the employee complies with the dictates of R.C. 4113.52. As we held in [Contreras v. Ferro Corp. (1995), 73 Ohio St.3d 244,] syllabus: `In order for an employee to be afforded protection as a `whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute.' * * * The obvious implication of Contreras is that an employee who fails to strictly comply with the requirements of R.C. 4113.52 cannot base a Greeley claim solely upon the public policy embodied in that statute." (Internal citations omitted.) Kulch v. Structural Fibers, Inc.
(1997), 78 Ohio St.3d 134, 153.
The trial court found that Appellant had not complied with the provisions of R.C. 4113.52. On appeal, Appellant has not challenged that finding. As such, she cannot base her wrongful discharge claim upon the public policy embodied in R.C. 4113.52.
 {¶ 20} In addition, Appellant is neither an accountant, nor charged with ensuring that the trust accounting was properly performed. As such, it is highly unlikely that Appellant may maintain a public policy tort under this theory. See Smith v. Calgon Carbon Corp. (C.A.3, 1990),917 F.2d 1338, 1344-45 (finding that it is highly unlikely that a public policy tort will lie unless the employee has been charged either by the employer or by law with the specific responsibility of protecting the public interest at issue). Furthermore,
 "there is no statute requiring a citizen to report such activity and by reporting it only to the individuals within [the] business circle, [Appellant] neither furthered nor affected a public interest. * * * [B]y notifying only those in the private business relationship, [Appellant] cannot claim that [her] discharge was motivated by an attempt to contravene a [public policy]." Zumot v. Data Management Co. (Ky.App. 2004), Case No. 2002-CA-002454-MR.
As such, Appellant cannot rely upon any reports of alleged violations of the tax code to support her public policy claim.
Fiduciary Duty and Code of Professional Responsibility
 {¶ 21} Appellant also argues that her termination places the public policies embodied in the common law of fiduciary duty and in the Code of Professional Responsibility in jeopardy. Specifically, Appellant asserts that she is entitled to bring a public policy tort because these areas of law provide her no adequate remedy. This Court disagrees.
 {¶ 22} The Wiles Court made clear that an examination of remedies is not always appropriate. "Where * * * the sole source of the public policy opposing the discharge is a statute that provides the substantive rightand remedies for its breach, the issue of adequacy of remedies becomes a particularly important component of the jeopardy analysis." (Internal quotations omitted.) Wiles at ¶ 15. Such is not the case here. Appellant has not claimed that she has any substantive rights as a result of the alleged breaches of the common law regarding fiduciary duty or the breaches of the Code of Professional Responsibility. Accordingly, this Court analyzes the efficacy of her claim under the more general approach espoused by the Wiles Court which requires inquiry into the existence of alternative means of promoting the particular public policy. Id.
 {¶ 23} Initially we note that Appellant admits that she is a non-attorney and is unfamiliar with the specific requirements for finding a breach of fiduciary duty or a violation of the Code of Professional Responsibility. Furthermore, Appellant concedes that it was not within the realm of her job responsibility to determine these types of violations, but rather she felt through her experience that Appellees were doing something improper. As Appellant was not charged with protecting the public interests at issue, we find it highly unlikely that she has a valid public policy cause of action under these theories. See Smith, 917 F.2d at 1344-45.
 {¶ 24} Additionally, we agree with the Smith court that when determining whether a public policy tort exists for a particular set of facts, we must weigh "the public's interest in harmony and productivity in the workplace" with the public's interest in encouraging the conduct performed by the plaintiff. Id. Herein, the record makes it clear that Appellant's repeated conduct interfered with the harmony and productivity of the work place. Furthermore, as noted above, her views were somewhat uninformed. She had no experience with the rules contained in the Code of Professional Responsibility; she was not skilled or informed in the area of the law surrounding fiduciary duties; and she was not charged with ensuring compliance with either of these policies. Accordingly, the interest in harmony and productivity in the workplace outweighs the interest in Appellant speaking out on topics unrelated to her job responsibility on topics with which she is unfamiliar.
 {¶ 25} Furthermore, there exist numerous alternatives to promoting the public policies relied upon by Appellant. The Preamble to the Ohio Code of Professional Responsibility charges attorneys with policing their own activities: "The legal profession is self-governing in that the Ohio Constitution vests in the Supreme Court of Ohio the ultimate authority to regulate the profession." Accordingly, the policy espoused by the Ohio Code of Professional Responsibility has a built-in mechanism for protecting the public's interest. Additionally, the Ohio Supreme Court has adopted a system through which violations of the Code may be litigated and publicly resolved. In addition, attorneys themselves are charged with a mandatory duty to report violations of the Code. See DR 1-103(A).
 {¶ 26} On the other hand, Appellant was not an attorney. As such, she had no legal duty to report alleged violations of the Rules. Further, given her unfamiliarity with the rules, her conduct only served to create disharmony in the workplace. Appellant approached attorneys and reported what she believed to be ethical violations. Her concerns were reviewed and found to lack merit. Rather than accepting the opinions of practicing attorneys who were familiar with the Code, Appellant continued to raise her concerns at every opportunity. Appellant repeatedly refused to accept the conclusions of her employer, despite the fact that they were more qualified to determine whether the Code had been violated. Appellees, as attorneys, gave their professional opinions to Appellant that no Code violations had occurred. As attorneys, Appellees were under a continuing obligation to report any such violations. DR 1-103(A). As such, permitting Appellant's termination for having made these statements does not serve to jeopardize the broad public policy contained in the Code of Professional Responsibility, i.e., ensuring the public that it will receive high quality legal services and preserving the integrity of the legal profession. As noted above, there exist multiple, effective alternatives for protecting the public policy contained in the Code. Finally, while not dispositive, this Court notes that upon research we have found no case in any jurisdiction that has permitted a public policy tort based upon the Code provisions relied upon by Appellant. Accordingly, Appellant has not met the jeopardy prong of her public policy claim as it relates to her reliance upon the Code of Professional Responsibility.
 {¶ 27} Similar to her reliance on the Code of Professional Responsibility, Appellant's reliance upon the common law surrounding a fiduciary duty is misplaced. Appellant again admitted that she was not charged with ensuring Appellees' compliance with their fiduciary duty. Furthermore, while Appellant was a professional, she admitted that she had no expertise in the area of fiduciary duty. Rather, she again gave her "informed view" that Appellees were violating their fiduciary duty based upon essentially her intuition. Appellees determined that Appellant's assertions lacked merit. Appellant refused to accept this response and continued to voice her complaints.
 {¶ 28} Appellant has offered no rationale to support her conclusion that permitting her termination jeopardizes the public policy contained in the common law surrounding fiduciary duty. Specifically, Appellant asserts that Ohio's common law evinces the clear public policy that fiduciaries must always act in the best interests of the principal. SeeIn re Estate of Binder (1940), 137 Ohio St. 26. Appellant has failed to identify how her discipline jeopardizes this policy.
 {¶ 29} We again note that there exist multiple alternatives to promoting this policy outside of Appellant's conduct. The principal may request an accounting or an audit of the trust at any time. Furthermore, the principal may maintain a lawsuit for breach of fiduciary duty if such a breach has occurred. As such, we cannot find that the public policy surrounding the duty of a fiduciary is placed in jeopardy by Appellant's discipline. Finally, like her above claim, this Court notes that we have found no case in any jurisdiction which has permitted a public policy tort on facts even remotely analogous to those alleged by Appellant.
 {¶ 30} We are not presented with a case in which Appellant was obligated to comply with a duty or refused to violate a duty. See Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U. Cin. L. Rev. 397, 404-407 (compiling cases). Rather, Appellant repeatedly raised concerns which were found by her employers, attorneys, to lack merit. Through her lawsuit, Appellant effectively seeks license to disregard in their entirety the conclusions reached by her employer. Such a license would effectively eliminate the ability of law firms to discipline non-attorney employees for repeatedly disrupting the work place by raising issues which are neither within their realm of knowledge nor within their job responsibilities. We cannot countenance such a result. Appellant has not established that any public policy was placed in jeopardy as a result of her discipline. Accordingly, she has failed to demonstrate an essential element of her public policy tort claim. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED ON THE AGE DISCRIMINATION CLAIM BECAUSE URDA EVIDENCED A PRIMA FACIE CASE, BECAUSE NUMEROUS ISSUES OF FACT REMAINED FOR TRIAL, AND BECAUSE ISSUES OF PRETEXT ARE FACTUAL IN NATURE, REQUIRING THE LOWER COURT TO DEFER THE AGE CLAIM TO A JURY." (emphasis sic.)
 {¶ 31} In her second assignment of error, Appellant argues that the trial court erred in granting summary judgment on her age discrimination claim. We disagree.
 {¶ 32} In her brief, Appellant argues at length that she was terminated for voicing her concerns about the handling of the trust. In her final assignment of error, Appellant states in conclusory fashion that her termination was motivated by age discrimination. In this assignment of error, Appellant has not cited to any portion of the record.
 {¶ 33} An appellant has the burden on appeal. See App. R. 16(A)(7); Loc. R. 7(A)(7). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v.Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. Pursuant to App. R. 16(A), an appellant's brief shall include the following:
 "(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." (Emphasis added.)
This Court may disregard arguments if the appellant fails to identify the relevant portions of the record from which the errors are based. See App. R. 12(A)(2); Loc. R. 7(F). While Appellant's brief contains numerous citations to the record in her statement of facts, in State v.Duffield, 9th Dist. No. 22634, 2006-Ohio-1823, we found that such a structure does not comport with the appellate rules. Id. at ¶ 11. It is not the function of this Court to extract the relevant facts from Appellant's statement of facts and apply them to the appropriate assignment of error. Such a burden lies with Appellant.
 {¶ 34} In her final assignment of error, Appellant has not even alleged the age of her replacement or even the date of her termination. Further, while she alleges that her replacement was inferior, she cites to no portion of the record to demonstrate this fact and she has not explained in any meaningful manner the law as it applies to the facts of her age discrimination claim. She simply concludes that she sufficiently rebutted the reasons given for her termination. Accordingly, Appellant has not met her burden of demonstrating error on appeal. Appellant's second assignment of error is overruled.
 III. {¶ 35} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
WHITMORE, P.J. CARR, J. CONCUR