DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, Michael and Bethany Elsass, appeal from the judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of appellees, David Crockett, the City of Akron, and Prudential Property Casualty Insurance Company. This Court affirms in part and reverses in part.
 I. {¶ 2} This matter arises out of a motor vehicle accident between appellants and appellee David Crockett, an Akron police officer, who was on duty at the time of the accident. Appellants filed a complaint, seeking uninsured/underinsured motorists benefits under their insurance policy with appellee, Prudential Property Casualty Insurance Company ("Prudential"), and damages from appellees David Crockett ("Crockett") and the City of Akron for physical injury and impaired earning capacity suffered by appellant Michael Elsass ("Michael") and for loss of consortium suffered by appellant Bethany Elsass ("Bethany").
 {¶ 3} On July 8, 2001, at approximately 12:30 a.m., appellant Michael was operating his motor vehicle on Exchange Street in Akron, Ohio. Appellant Bethany was a passenger in Michael's vehicle. Michael and Bethany were on their way to a dance club called Thursday's on Exchange Street. Michael tried to find a parking space in the Kinko's parking lot within a block from Thursday's on the same side of the street. Bethany's stepsister Carrie Mayer was following appellants' vehicle in a separate vehicle.
 {¶ 4} Exchange Street, in the relevant area, is a four-lane street, with two westbound and two eastbound lanes. In addition, there is an additional parking lane on both sides of the street.
 {¶ 5} Michael could not find a parking space in the Kinko's lot, so he exited the lot, making a left-hand turn onto Exchange Street and driving westbound. He testified at deposition that he saw no westbound traffic as he exited the parking lot. Michael further testified at deposition that he entered the westbound curb lane and continued driving there until he attempted to make a uturn.
 {¶ 6} Michael spotted an on-street parking space on the opposite side of the street. Intending to make a u-turn to enter that spot, Michael looked to his left and in his mirrors to see if any cars were coming. He testified that he saw a car about ten car lengths behind him, but that he assumed that that was Carrie's vehicle. There is no dispute that the vehicle behind Michael's was not Carrie's, because Carrie did not leave the Kinko's parking lot until after the accident. Michael was clear that the vehicle behind him had its headlights on. Michael testified that he did not stop before making the u-turn; rather, he continued to "roll" his vehicle at approximately 10 m.p.h. before turning.
 {¶ 7} Michael testified that he signaled for a left-hand turn, and turned his vehicle until it was perpendicular to Exchange Street. He testified that one to two feet of his vehicle remained in the westbound lane, when he heard the squeal of tires and felt an impact. Michael testified that appellant Crockett's police car hit the driver's side rear wheel and back panel of Michael's truck.
 {¶ 8} On July 8, 2001, appellant Crockett was driving a police car for the Akron police department during the 7:30 p.m. to 3:30 a.m. shift, when he received a call before 12:30 a.m. dispatching him to a stabbing call on Avondale in Akron. Crockett was informed that the suspect was still on the scene.
 {¶ 9} Crockett traveled west on Exchange Street toward the location of the alleged crime. He was employing both his siren and overhead lights until he cleared the intersection of Exchange and Brown. He testified at deposition that he turned off the siren and overhead lights once he cleared the intersection, because he did not want to alert the suspect that he was close to the scene. Crockett testified, however, that his headlights remained on while he was driving to the scene. Crockett was driving at speeds between 35 and 45 m.p.h. in a 25 m.p.h. zone.
 {¶ 10} Crockett was traveling in the southernmost lane near the double yellow line, when Michael's vehicle turned in front of him into Crockett's path. Crockett testified that the front of his police car impacted with Michael's vehicle just behind the driver's side rear wheel. Crockett testified that Michael's vehicle was perpendicular to his police car at the time of the collision, which occurred one to two feet within the westbound passing lane of Exchange. The airbag in Crockett's vehicle deployed, but when he was able to exit his vehicle, he noticed that Michael's vehicle had come to rest against another vehicle parked on the eastbound side of Exchange.
 {¶ 11} Appellees Crockett and the City of Akron filed a motion for summary judgment, arguing for dismissal of appellants' complaint for the reasons that Crockett was not negligent as a matter of law and that both Crockett and the City of Akron were statutorily immune from liability. Appellee Prudential also filed a motion for summary judgment, arguing for dismissal of appellants' complaint for the reason that Crockett was not negligent as a matter of law, so that appellants were, therefore, not legally entitled to recover under the terms of the uninsured/underinsured ("UIM") provisions of their automobile policy. The trial court granted appellees' respective motions for summary judgment. Appellants timely appeal, raising one assignment of error for review.
 II. ASSIGNMENT OF ERROR
"The trial court erred in granting Summary Judgment for [appellants], as there were Genuine issues of material fact regarding the speed of officer crockett's vehicle at the time of the accident, whether his headlights were on, whether or not he was obligated to employ his overhead lights and siren, and whether or not he was properly trained."
 {¶ 12} Appellants argue that the trial court erred in granting summary judgment to appellees, because genuine issues of material fact exist regarding whether Crockett was reckless in relation to the accident, whether Crockett and the City of Akron are immune from liability, and whether appellants are legally entitled to UIM coverage under the Prudential insurance policy. This Court agrees in part and disagrees in part.
 {¶ 13} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the nonmoving party. Viock v. Stowe-Woodward Co.
(1983), 13 Ohio App.3d 7, 12.
 {¶ 14} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 15} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the nonmoving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449.
Summary Judgment: Crockett
 {¶ 16} Appellants argue that the trial court erred in granting summary judgment in favor of Crockett, because genuine issues of material fact exist regarding whether he was reckless in relation to the accident so as to exempt him from any statutory immunity provisions. Appellants argue that whether Crockett was reckless is an issue that should be submitted to a jury at trial. This Court disagrees.
 {¶ 17} There is no dispute that Crockett, as an Akron police officer at the time of the accident, was an employee of a political subdivision. R.C. 2744.03(A)(6) sets forth the circumstances under which an employee of a political subdivision is immune from civil liability for damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function. Pursuant to R.C. 2744.01(C)(1) and (2), police and law enforcement services constitute governmental functions.
 {¶ 18} R.C. 2744.03(A)(6) states:
"In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
"(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
"(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
"(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term `shall' in a provision pertaining to an employee."
 {¶ 19} There is no dispute that Crockett was acting within the scope of his employment and official responsibilities at the time of the accident, so R.C. 2744.03(A)(6)(a) is inapplicable to negate Crockett's immunity from liability. In addition, there is no evidence or argument that civil liability has been imposed upon Crockett by a section of the Revised Code, so R.C. 2744.03(A)(6)(c) is also inapplicable to this matter. Appellants argue that Crockett was reckless in his acts, so this Court analyzes any possible exception to immunity for Crockett under R.C. 2744.03(A)(6)(b). Further, because appellants only argue that Crockett's acts were reckless, rather than done with malicious purpose, in bad faith, or in a wanton manner, this Court only analyzes the matter in terms of recklessness.
 {¶ 20} Appellants argue that Crockett's acts were reckless, because he was violating certain traffic laws and Akron police department procedures at the time of the accident. Specifically, appellants argue that Crockett was operating his vehicle at the time of the accident without using his siren and overhead lights, as required by R.C. 4511.041. Appellants also argue that Crockett was speeding at the time of the accident in violation of R.C. 4511.24. Additionally, appellants assert that Crockett did not have his headlights on while speeding to an emergency call at night without the use of any other devices to alert other drivers to his presence on the road. Appellants assert that these violations demonstrate that Crockett was operating his police car recklessly, i.e. without the requisite due regard for public safety.
 {¶ 21} This Court has already stated that "`reckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent." Shalkauser v. Medina, 148 Ohio App.3d 41,2002-Ohio-222, at ¶ 37, citing Thompson v. McNeill (1990),53 Ohio St.3d 102, 104-105, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.
 {¶ 22} It was dark at 12:30 a.m. on the morning of the accident, although there was some illumination from street lights. Although there was rain that morning, it did not start to rain until after the accident had occurred. Certainly, the failure to use headlights while operating a vehicle on a public roadway under those conditions would give rise to a question of whether the driver was reckless. There is nothing in the record, however, to indicate that Crockett did not have his headlights on at the time of the accident. Crockett testified at deposition that he was using his headlights at the time of the accident. Michael testified that the only vehicle behind him on Exchange Street, necessarily Crockett's police car as Carrie Mayer had not reentered the roadway and there was no other westbound traffic, had its headlights on. Although Carrie Mayer testified at deposition that Crockett's headlights were not on after the accident in which the front end of the police car impacted with Michael's vehicle, she testified only that there was something odd about the police car as it passed her prior to the accident. Ms. Mayer did not definitively state that Crockett's vehicle was operating without headlights prior to the collision. Under the circumstances, there is no evidence that Crockett failed to utilize his headlights prior to impact. Therefore, Crockett was not reckless in regard to his use of headlights, and no genuine issue of material fact exists in that regard.
 {¶ 23} R.C. 4511.041 states:
"[Various enumerated traffic provisions of the Revised Code] do not apply to the driver of an emergency vehicle or public safety vehicle if the emergency vehicle or public safety vehicle is responding to an emergency call, is equipped with and displaying at least one flashing, rotating, or oscillating light visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle and if the driver of the vehicle is giving an audible signal by siren, exhaust whistle, or bell. This section does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons and property upon the highway."
R.C. 4511.21, addressing speed limits, is one of the enumerated traffic provisions in R.C. 4511.041. In addition, R.C. 4511.24 states:
"The prima facie speed limitations set forth in section 4511.21 of the Revised Code do not apply to emergency vehicles or public safety vehicles when they are responding to emergency calls and are equipped with and displaying at least one flashing, rotating, or oscillating light visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle and when the drivers thereof sound audible signals by bell, siren, or exhaust whistle. This section does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons using the street or highway."
 {¶ 24} In addition, the Akron police department issued to its police officers an emergency vehicle operation/emergency response procedure, in effect at the time of the accident, which states in relevant part:
"The goal of police driving is safety to the officer and the public. Operating a police vehicle requires that the officer exercise good judgment and alertness. Use of overhead lights and siren must be in compliance with the Ohio Revised Code.
"* * *
"All emergency vehicle operations shall be conducted in strict accordance with existing statutes and ordinances; O.R.C. 4511.03, 4511.24,4511.45 and 4513.21. Officers engaged in emergency vehicle operations shall utilize both audible (siren) and visual (emergency lights) emergency warning equipment in response to a call to duty.
"* * *
"I. Emergency call responses
"A. Officers shall use overhead lights and siren in accordance with the Ohio Revised Code.
"1. Officers are to respond to the assigned emergency call immediately, using overhead lights and siren when appropriate to do so, proceeding directly to the location, while operating the vehicle with due regard for the safety of all persons.
"2. Emergency calls include, but are not limited to:
"* * *
"b. Serious felonies in progress that the officer has reason to believe could or has resulted in death or serious bodily injury.
"B. Nothing in this procedure should be construed so as to restrict or prevent any officer from safely fulfilling the requirements of his/her sworn duty."
 {¶ 25} This Court has already stated that a violation of an internal departmental policy is not relevant to the issue of whether the officer's conduct constituted reckless behavior. Shalkhauser at ¶ 41, citingRodgers v. DeRue (1991), 75 Ohio App.3d 200, 205. Therefore, appellants' argument that Crockett was violating certain Akron police department procedures at the time of the accident does not create a genuine issue of material fact for the jury.
 {¶ 26} Appellants assert that Crocket received "city points" as a result of the accident. There is conflicting evidence regarding whether or not Crockett received "city points" after an administrative hearing for his role in the accident. Even assuming that he received the "city points," there is no evidence in the record regarding the significance of such points and the grounds on which they were awarded. Therefore, that Crockett may have received these "city points" does not create an issue of fact regarding recklessness for the jury.
 {¶ 27} Appellants also argue that Crockett's recklessness caused the accident, because Crockett was not properly trained and he did not have adequate experience in operating a police vehicle without supervision. Appellants' argument is without merit.
 {¶ 28} There is no dispute that Crockett graduated from the Akron police academy. He then completed a six-month period, in which he was partnered with a senior officer while on duty. Crockett testified at deposition that he worked with a senior partner on occasion after the initial six-month period, but there is no evidence to indicate that such pairing was anything other than routine partnering based on availability of officers, cars, and the time and location of Crockett's assignment. In addition, appellants presented no evidence to demonstrate that Crockett was on probation or assigned to a senior officer at the time of the accident due to incompetence. Without evidence of any problematic performance by the officer, the fact that Crockett had worked as a police officer for less than two years does not create a genuine issue of material fact for a jury.
 {¶ 29} There is no dispute that Crockett had turned off his siren and overhead lights once he got close to the area of the felony dispatch call. There is further no dispute that Crockett was exceeding the speed limit on Exchange Street while responding to an emergency call, which, in addition to the Akron police department's definition, is any call to duty, including, but not limited to, police dispatches. R.C. 2744.01(A). This Court has stated that "the fact that danger inheres in high speed chases alone is not sufficient to present a genuine issue of fact concerning whether [a police officer] acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Shalkhauser at ¶ 40.
 {¶ 30} Crockett testified that he turned off the siren and overhead lights so as not to alert the felony suspect, who was still in the area. In addition, Officer Null testified at deposition that he would recognize the reasonableness and viability of driving without using a siren and overhead lights at night on an emergency call for that very purpose. This Court finds that appellants' attempts to misconstrue Officer Null's testimony in that regard are disingenuous. Further, both Crockett and Officer Null testified that they understood that police officers could use discretion in their handling of emergency calls and that the police manual merely set out guideline procedures.
 {¶ 31} In addition, appellants misconstrue Crockett's travel as being at a "very high rate of speed," analogizing to a case in which the officer's speed exceeded 60 m.p.h. See Edinger v. Bd. Of Allen Cty.Commrs. (Apr. 26, 1995), 3d Dist. No. 1-94-84. In this case, Crockett was driving 45 m.p.h. in a 25 m.p.h. zone at a time when there was very light traffic, the weather was clear, and street lights illuminated the area. Further, Crockett slowed as he passed through an intersection approximately 400 feet before the accident. His siren and overhead lights were activated at that time. Finally, Crockett was traveling in the passing lane of Exchange Street, when Michael turned in front of him from the curb lane to make a u-turn.
 {¶ 32} This Court recognizes that issues regarding recklessness are generally questions that are presented to a jury. Shadoan v. Summit Cty.Children Serv. Bd., 9th Dist. No. 21486, 2003-Ohio-5775, at ¶ 14. We have also recognized, however, that the standard for showing such conduct is high. Id. Therefore, summary judgment on the basis of immunity is appropriate where Crockett's actions show he had no knowledge or reason to know of facts that would lead a reasonable person to believe that his conduct created an unnecessary risk of physical harm.
 {¶ 33} In this case, appellant has failed to set forth facts demonstrating that Crockett was acting in a reckless manner at the time of the accident so as to lose immunity under R.C. 2744.03(A)(6). The facts presented demonstrate that Crockett was on an emergency call, where someone had been stabbed and the suspect was still in the area, so that time was of the essence. Crockett was exceeding the speed limit and not using his siren or overhead lights in violation of statute and police department guidelines, but he was doing so in the good faith belief that his actions were necessary and that he had discretion to proceed in such a manner. Crockett used his headlights and attempted to pass Michael's vehicle in the appropriate lane. While Crockett's actions may have risen to the level of negligence, there was nothing to indicate that a reasonable person would have believed that such conduct created an unnecessary risk of physical harm under the circumstances. Therefore, Crockett is immune from liability pursuant to R.C. 2744.03(A)(6), and the trial court properly granted summary judgment to Crockett as against appellants.
Summary Judgment: City of Akron
 {¶ 34} Appellants argue that the trial court erred in granting summary judgment to the City of Akron, because questions of fact regarding whether appellee Crockett was reckless in regard to the accident preclude the City of Akron from claiming immunity pursuant to R.C. 2744.02. This Court disagrees.
 {¶ 35} In determining whether a political subdivision such as the City of Akron is immune from liability, this Court must engage in a three-tier analysis. Cater v. Cleveland (1998), 83 Ohio St.3d 24, 28. The first tier is the premise under R.C. 2744.02(A)(1) that:
"[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 36} The second tier involves the five exceptions set forth in R.C.2744.02(B), any of which may abrogate the general immunity delineated in R.C. 2744.02(A)(1). The five exceptions include negligent operation of any motor vehicle by an employee; negligent acts by an employee with respect to proprietary functions; the political subdivision's negligent failure to maintain roads; employee negligence on political subdivision grounds due to physical defects on the grounds; and when civil liability is expressly imposed by statute. R.C. 2744.02(B)(1)-(5). The only exception to political subdivision immunity which may be applicable in this case arises out of R.C. 2744.02(B)(1), which states, in part:
"Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority."
 {¶ 37} There is no dispute that Crockett was an employee of the City of Akron at the time of the accident, and that he was engaged within the scope of his employment and authority as a police officer. In addition, based on Crockett's failure to comply with certain traffic statutes and departmental guidelines, as discussed above, which statutes and guidelines imputed a duty to exercise due regard for the safety of persons and property, there may be a question of fact as to whether Crockett was negligent in his operation of the police car at the time of the accident. The analysis does not stop here, however, because R.C.2744.02(B)(1) further sets forth three full defenses to liability.
 {¶ 38} The applicable defense in this case grants a full defense to liability to:
"(a) A member of a municipal corporation police department or any other police agency [who] was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct[.]"
 {¶ 39} There is no dispute that Crockett was operating the police car while responding to an emergency call. Therefore, this Court must determine whether Crockett's conduct rose to the level of willful or wanton misconduct.
 {¶ 40} This Court has adopted the definition of "wanton misconduct" as:
"[t]he failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." Shalkhauser at ¶ 26, citing Brockman v. Bell (1992),78 Ohio App.3d 508, 515.
 {¶ 41} This Court has further adopted the definition of "willful misconduct" as:
"[a]n intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." Shalkhauser at ¶ 27, quotingTighe v. Diamond (1948), 149 Ohio St. 520, 527.
 {¶ 42} This Court has delineated at great length Crockett's actions prior to and at the time of the accident. Clearly, Crockett owed a duty of care to exercise due regard for the safety of persons and property during the execution of his police duties. There is no evidence, however, that the probability of harm from Crockett's failure to use his siren and overhead lights or obey the posted speed limit was either great or known to Crockett. There was very limited traffic on Exchange Street, at the time Crockett was on the emergency call. The area was well lit and the weather was clear. Crockett was driving 45 m.p.h. under those circumstances, not a "very high rate of speed" as appellants would assert. Time was of the essence in responding to an emergency where someone had been stabbed and the suspect was still in the area. The accident occurred when Michael made a u-turn into Crockett's path, as Crockett was driving in the passing lane of the street. Under these circumstances, Crockett's actions cannot be classified as wanton misconduct, and no genuine issue of material fact exists.
 {¶ 43} There is also no evidence that Crockett's actions constituted willful misconduct. As an officer on patrol, Crockett had a duty to respond to the emergency call dispatch involving a serious felony. The police department guidelines clearly qualify the requirements regarding emergency call responses by stating that "[n]othing in this procedure should be construed so as to restrict or prevent any officer from safely fulfilling the requirements of his/her sworn duty." Crockett was under a sworn duty to attempt to apprehend a suspect involved in a serious felony. The circumstances necessitated stealth and haste. In addition, in consideration of the limited traffic and clear visibility at the time, as well as a driver's reasonable expectation to be able to drive in a passing lane unimpeded by curb-lane traffic making u-turns, there is no evidence to indicate that Crockett could reasonably know or appreciate any likelihood of the resulting injury. Under these circumstances, Crockett's actions cannot be classified as willful misconduct, and no genuine issue of material fact exists. Therefore, the City of Akron is immune from liability in this instance, and the trial court properly granted summary judgment to the City of Akron as against appellants.
Summary Judgment: Prudential
 {¶ 44} Appellants argue that a genuine issue of material fact exists as to whether appellants are entitled to UIM coverage under the terms of their automobile policy with Prudential. This Court agrees.
 {¶ 45} The parties agree that appellants must be "legally entitled to recover" from Crockett and/or the City of Akron before they are entitled to compensatory damages under the terms of the insurance policy. The trial court found that appellants were not legally entitled to recover damages from Crockett and/or the City of Akron, because Crockett and the City of Akron are statutorily immune from liability. Such a finding, however, does not comport with the terms of the policy.
 {¶ 46} The UIM coverage endorsement of the policy states that Prudential will pay compensatory damages which one of its insureds is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The policy defines "uninsured motor vehicle," then continues, in relevant part:
"However, `uninsured motor vehicle' does not include any vehicle or equipment:
"* * *
"2. Owned by any governmental unit or agency, unless the owner or operator of the "uninsured motor vehicle" has:
"a. An immunity under the Ohio Political Subdivision Tort Liability Law[.]"
Therefore, under the plain language of the policy, Crockett and the City of Akron fall within the policy's UIM endorsement by virtue of their immunity. As a result, summary judgment in favor of Prudential on the grounds of immunity is not appropriate.
 {¶ 47} This Court agrees with Prudential's argument that the appropriate query in determining whether appellants are legally entitled to recover under the terms of the policy is whether Crockett or the City of Akron was at fault for the accident. Such fault need not derive from egregious conduct rising to the level of recklessness, bad faith, or willful and wanton misconduct. Negligence on the part of either Crockett or the City of Akron will suffice to establish fault. Based on a review of the facts, this Court finds that a genuine issue of material fact exists as to whether Crockett was negligently operating his police car at the time of the accident.
 {¶ 48} To establish a cause of action for negligence, one must show the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty. Menifee v. Ohio Welding Prod., Inc.
(1984), 15 Ohio St.3d 75, 77.
 {¶ 49} Both police department guidelines and the law impute a duty of due care upon Crockett. R.C. 4511.24 and 4511.041 exempt emergency vehicles from certain traffic laws. However, R.C. 4511.24 states that "[t]his section does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons using the street or highway." R.C. 4511.041 expands the duty in regard to "all persons and property upon the highway."
 {¶ 50} While responding to an emergency call, Crockett turned off his siren and overhead lights, the devices designed to warn others of the presence of a police car en route to an emergency necessitating haste. Although he had a valid interest in arriving at the scene of the stabbing undetected by the suspect, Crockett's failure to continue to use his siren and overhead lights served to give less notice of the presence of his speeding vehicle to other persons on the street. Consequently, a question of fact remains regarding whether or not Crockett breached his duty of care. Assuming, arguendo, that Crockett breached his duty of care, a question of fact remains regarding whether that breach was the proximate cause of the accident.
 {¶ 51} This Court takes well Prudential's argument that Michael may have been at fault for the accident. Michael also operated his vehicle in a manner contrary to law. For example, R.C. 4511.44 requires that the operator of a vehicle about to cross a street from any place other than another roadway "shall yield the right of way to all traffic approaching on the roadway to be * * * crossed." When Michael attempted to execute a u-turn from the westbound curbside lane across the westbound passing lane, he was required to yield to any approaching traffic in the passing lane. Crockett was driving his police car in the passing lane. Under those circumstances, a question of fact exists regarding whether Michael was negligent in the operation of his vehicle and whether that negligence was the proximate cause of the accident.
 {¶ 52} Because a genuine issue of material fact exists regarding who may have been at fault for the accident, a concomitant issue of fact exists regarding whether appellants are legally entitled to damages under the terms of the automobile insurance policy. Therefore, the trial court improperly granted summary judgment to Prudential. For the foregoing reasons, appellants' assignment of error is sustained in part in regard to the trial court's granting of summary judgment to Prudential.
 III. {¶ 53} Appellants' assignment of error is overruled in part, solely as it relates to the trial court's granting of summary judgment in favor of appellees David Crockett and the City of Akron. The trial court properly granted summary judgment to Crockett and the City of Akron as against appellants. Appellants' assignment of error is sustained in part, solely as it relates to the trial court's granting of summary judgment in favor of appellee Prudential. Because a genuine issue of material fact exists regarding whether appellants are legally entitled to UIM coverage under the terms of the insurance policy, the trial court improperly granted summary judgment to Prudential as against appellants. Accordingly, the judgment of the Summit County Court of Common Pleas is affirmed in part reversed in part, and cause remanded.
Judgment affirmed, in part, reversed, in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Batchelder, J., Moore, J. concur.