[Cite as *State v. Ruddock*, 2012-Ohio-2711.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | Case No. 11-CA-94 |
| LUCAS S. RUDDOCK | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Licking County Court of
Common Pleas, Case No. 11-CR-94

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: June 13, 2012

APPEARANCES:

For Appellant:

ROBERT C. BANNERMAN
P.O. Box 77466
Columbus, OH 43207-0098

For Appellee:

KENNETH OSWALT
LICKING COUNTY PROSECUTOR
BRIAN WALTZ
20 S. 2nd St., 4th Floor
Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Lucas S. Ruddock appeals from the August 12, 2011 judgment entry of conviction and sentence entered in the Licking County Court of Common Pleas on August 12, 2011. Appellee is the state of Ohio.

{¶2} This case arose when Detective Kris Kimble of the Central Ohio Drug Enforcement Task Force set out to review the pseudoephedrine logs of local pharmacies, looking for anyone buying products containing ephedrine or pseudoephedrine in unusual amounts. These products contain an ingredient in the manufacture of methamphetamine. In Ohio, an individual may purchase products containing up to 3.6 grams of pseudoephedrine in one day, but no more than 9 grams in 30 days.

{¶3} All Ohio pharmacies are required to maintain logs of their pseudoephedrine sales. These logs indicate the name of the purchaser and the amount of grams purchased. The problem, however, is that these logs are not linked between pharmacies. In other words, purchasers going to a number of different pharmacies aren't caught until someone collects and reviews all of the logs. Some pharmacy chains do have their own internal links, but at this time, there is no statewide system for comparison of the logs.

{¶4} Consequently, detectives like Kimble periodically review the logs for unusual purchase amounts. During his review, the names of appellant and Alisha Cole came up several times in a number of pharmacies throughout Licking County. Kimble gathered enough logs to establish appellant and Cole exceeded the allowed amounts, and went to the couple's apartment to speak to them. At the time of this

investigation, appellant and Cole lived together at Apt. 106-G Lakewood Drive, Hebron, Licking County.

{¶5} Appellant opened the door and allowed Kimble to come in. Kimble spoke with appellant and Cole together. Kimble advised them of their Miranda rights, advised them of the open investigation, and asked why they purchased so much pseudoephedrine.

{¶6} Alisha Cole first claimed she bought the pseudoephedrine because she was sick, but Kimble replied that it didn't make sense to buy more than 10 grams in 30 days. Cole eventually admitted she bought the pills to trade for methamphetamine. She stated two boxes of pseudoephedrine products could be traded for a quarter gram of methamphetamine. Cole provided the name of the individual to whom she provided the pills. Cole was explicit as to the purpose of the trade: she traded the pills to the individual to enable that person to manufacture more methamphetamine.

{¶7} Appellant stated that he did the same thing, and provided the pills he obtained to the same person. Appellant provided the name and address where the meth was being manufactured.

{¶8} Kimble advised that it's not uncommon for meth manufacturers to send others into pharmacies to obtain the necessary pseudoephedrine. Sometimes the buyers use fake IDs to avoid being caught. In this case, appellant and Cole used their own names and addresses.

{¶9} Kimble obtained written statements from both appellant and Cole. Appellant acknowledged he knew the pills he traded were being used to manufacture meth. Appellant's written statement noted he and Cole bought Sudafed at pharmacies

to trade 2 boxes for a quarter gram of meth.  The statement also contained the address where he believed the manufacture was taking place.

{¶10} Kimble and investigators obtained consent to search and looked around the apartment.  They found an assortment of drug paraphernalia and "finished product," including straws for snorting meth, razors, a Kroger card used to cut meth, a mirror someone used to snort meth, and a large black bag containing a "starter kit" for a "mini meth lab."  In the master bedroom, investigators discovered meth residue and marijuana on the bed.

{¶11} The black bag contained several pieces of rubber tubing, containers, jars, starter fluid, clear fuel, a strainer, and coffee filters.  Kimble noted these are the majority of components used in the manufacture of methamphetamine, and there is no reason someone would have four cans of starter fluid together with these other "ingredients" for any legitimate purpose.

{¶12} Investigators held up the black bag and asked who it belonged to, and appellant stated the bag and everything found in the bedroom was his.  Kimble stated it was a "mini meth lab" and appellant still acknowledged it was his.

{¶13} Appellee called pharmacy employees from Kroger and CVS to testify as to their pseudoephedrine logs showing appellant's purchases and their policies when a customer purchases a product containing pseudoephedrine.

{¶14} Investigators found a plastic baggie containing what proved to be meth residue, and appellant stated it was his.

{¶15} Appellant was initially charged by indictment with one count of illegal assembly or possession of chemicals used to manufacture a controlled substance

[R.C. 2925.041(A)(C)], a felony of the third degree, and one count of aggravated possession of drugs [R.C. 2925.11(A)(C)(1)(a)], a felony of the fifth degree.[1]

{¶16} The original indictment was dismissed by the state and appellant was re-indicted on the same charges.

{¶17} Appellant entered a plea of not guilty and the case proceeded to trial by jury. Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of the state's evidence and at the close of all of the evidence; the motions were overruled.

{¶18} Appellant was found guilty of the count of illegal assembly and not guilty of the count of aggravated drug possession. The trial court sentenced him to an aggregate prison term of four years, which included three years for illegal assembly and one year for committing the offense while on postrelease control.

{¶19} Appellant appeals from his conviction and sentence.

{¶20} Appellant raises two Assignments of Error:

{¶21} "I. APPELLANT'S CONVICTION WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE (REFLECTED IN TRIAL TRANSCRIPT)."

{¶22} "II. THE TRIAL COURT ERRED BY ALLOWING PREJUDICIAL CO-DEFENDANT HEARSAY AND UNDISCLOSED WITNESS TESTIMONY TO GO TO THE JURY (REFLECTED IN TRIAL TRANSCRIPT)."

---

[1] Appellant was also charged with one count of possession of marijuana, a minor misdemeanor pursuant to R.C. 2925.11(A)(C)(3)(a). This count was tried to the court and appellant was found guilty; he was fined $100 plus court costs. This count is not at issue in this appeal.

{¶23} In his first assignment of error, appellant challenges the sufficiency and weight of the evidence upon which his conviction rests.

{¶24} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶25} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶26} Appellant was convicted of one count of assembly or possession of chemicals used to manufacture a controlled substance with intent to manufacture a controlled substance pursuant to R.C. 2925.041(A), which states, "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

{¶27} Appellant essentially argues that he was charged with the wrong offense. He asserts that the evidence at trial may have shown he purchased pseudoephedrine in greater amounts than the law allows, but the evidence does not show that he knew it would be used to manufacture more methamphetamine. We disagree.

{¶28} The record amply demonstrates appellant's involvement and criminal culpability in a scheme in which he and his girlfriend purchased pseudoephedrine products at various local pharmacies for the purpose of trading the pills for methamphetamine. Appellant acknowledged verbally and in writing the pills would be used to manufacture more methamphetamine. Appellant possessed a "mini meth lab" and the finished product, along with tools for consumption of the finished product. He bought pseudoephedrine, a key ingredient, in quantities exceeding those necessary for legitimate personal use.

{¶29} Appellant's conviction, in short, is supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶30} Appellant's first assignment of error is overruled.

{¶31} In his second assignment of error, appellant argues that the trial court erred in admitting certain evidence. We disagree.

{¶32} We note the admission or exclusion of evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶33} Appellant asserts a portion of Kimble's testimony constitutes impermissible hearsay. The hearsay appellant complains of, although not entirely clear, is Kimble's recounting of Cole's explanation for purchasing the pseudoephedrine. We note appellant raised only one objection to this line of questioning: when appellee initially elicited the information that Cole claimed at first she bought the pills because she was sick. Defense trial counsel objected, and the trial court at first sustained the objection and then overruled it when the state explained that Cole's statements provided the context for appellant's statements to police, which agreed with Cole's.

{¶34} Appellant did not renew his objection or raise any additional objection as the state elicited Cole's full statement, including the admission that the pills were purchased to trade for methamphetamine. Appellant has therefore waived all but plain error.

{¶35} Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an

error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No. 2008-CA-00137, 2009-Ohio-1688, citing *State v. Morales*, 10 Dist. Nos. 03-AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19 (citation omitted). The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes*, supra, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶36} Admission of Cole's full statement does not constitute plain error. Even if the statement constituted impermissible hearsay, the error could not have had any effect on the outcome of the trial because appellant's statement agreed with Cole's. After testifying that Cole told Kimble they traded the pseudoephedrine to someone named "Jen Cruz" for meth, Kimble further testified "* * *. [Appellant] chimes in after Alisha says that and says he does the same thing, and he specifically says Jen Cruz, and he wrote that in his statement also."

{¶37} Appellant contends this statement is meaningless without the impermissible hearsay, and should not have been allowed for the truth of the matter asserted, i.e. to establish appellant knew the Sudafed would be used for the manufacture of methamphetamine. We disagree; upon further review of the record, Kimble testifies appellant specifically told him, verbally and in writing, that he traded the pills to Cruz for a quarter gram of methamphetamine which was being

manufactured at an address appellant was uncertain of. No plain error exists upon the record.

{¶38} Appellant further argues the trial court should not have permitted Detective Boerstler to testify at all. Boerstler's name had been provided to the defense as a state's witness in an earlier indictment against appellant, which was dismissed. Upon appellant's re-indictment in the instant case, appellant did not request discovery. Appellant's trial counsel acknowledged receipt of discovery from the original indictment, however, and the trial court overruled counsel's objection to Boerstler's testimony.

{¶39} Appellee's duty to disclose witnesses is triggered by appellant's written demand pursuant to Crim.R. 16, and no such demand was made in this case. Appellant therefore waived any objection to Boerstler's testimony. We further note Boerstler's brief testimony merely corroborated Kimble's testimony about what happened when appellant and Cole were interviewed at the apartment. The trial court did not err in allowing Boerstler to testify.

{¶40} Appellant's second assignment of error is overruled.

{¶41} Having overruled both of appellant's assignments of error for the foregoing reasons, the judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Hoffman, J. and

Edwards, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JULIE A. EDWARDS

[Cite as *State v. Ruddock*, 2012-Ohio-2711.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| LUCAS S. RUDDOCK | : | |
| | : | |
| | : | Case No. 11-CA-94 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JULIE A. EDWARDS