[Cite as *In re O.S.*, 2021-Ohio-3729.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: O.S. | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 21CA000018 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Appeal from the Knox County Court of
                              Common Pleas, Juvenile Division, Case
                              No. 2182137

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       October 19, 2021

APPEARANCES:

For - Appellant                 For - Appellee

JOHN DANKOVICH                  ASHLEY JOHNS
110 East High Street            KNOX COUNTY JFS
Mount Vernon, OH 43050          117 East High Street
                                Mount Vernon, OH 43050

*Gwin, P.J.*

{¶1} Appellant appeals the May 11, 2021 judgment entry of the Knox County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of O.S. to the Knox County Department of Job and Family Services ("KCDJFS").

### Facts & Procedural History

{¶2} Appellant J.S. is the father ("Father") of O.S., who was born on February 27, 2013. D.S. is the mother ("Mother") of the child.

{¶3} On July 8, 2016, O.S. was placed into the temporary custody of KCDJFS due to the drug-use and homelessness of Mother, and due to domestic violence between Mother and her boyfriend. Father was not involved in O.S.'s life when she was removed from Mother's home. On August 9, 2016, the trial court found O.S. dependent, and awarded temporary custody of O.S. to KCDJFS. The case progressed, but then reached the two-year point. Because the case reached the two-year time limitation for temporary custody imposed by R.C. 2151.415(D)(4), KCDJFS dismissed the case and refiled.

{¶4} On October 15, 2018, KCDJFS refiled a complaint for abuse, neglect, and/or dependency with regards to O.S. The complaint alleged, in part: there were initial reports of domestic violence between Mother and her boyfriend; Father has an extensive history of lack of housing and stability; Father has significant mental health concerns and, in the past, has deviated from regular treatment; Father has been hospitalized on numerous occasions; Father struggled with maintaining employment; there are concerns with Father's living conditions; there is inconsistent access to working utilities (electric and water) at Father's house; and marijuana use of Father.

{¶5} The trial court held a shelter care hearing on October 16, 2018. In a judgment entry, the trial court found KCDJFS used reasonable efforts to prevent the removal of the child from the home, to remedy the conditions that led to the removal of the child, and to make it possible for the child to return home. Specifically, the reasonable efforts were: facilitation of visitation and creation of a case plan.

{¶6} The trial court held an adjudicatory hearing on November 5, 2018. In a judgment entry, the trial court found O.S. was a dependent child pursuant to R.C. 2151.04(C). Further, the trial court found KCDJFS used reasonable efforts to prevent the removal of the child from the home, to remedy the conditions that led to the removal of the child, and to make it possible for the child to return home. Specifically, the reasonable efforts were: foster placement, assistance including KAT vouchers, referrals for parents, and case plan efforts for over two years. The trial court granted continued temporary custody of O.S. to KCDJFS.

{¶7} Upon the resignation of the previous GAL, the trial court appointed Mary Lou Ranney ("Ranney") as the guardian ad litem ("GAL") of O.S. on January 3, 2019.

{¶8} The trial court held a dispositional hearing on December 10, 2018. In a March 6, 2019 judgment entry, the trial court found it was in the best interest of O.S. to be placed in the temporary custody of KCDJFS. Further, that KCDJFS made reasonable efforts to work with the family to prevent the removal of the child from the home, to remedy the conditions that led to the removal of the child from the home, to make it possible for the child to return home, and to establish permanency for the child. The court specifically found these reasonable efforts were: working with the family, and offering visitation to both parents.

{¶9} The trial court also adopted and approved the case plan. Pursuant to the case plan, Father was required to: apply for public assistance; demonstrate he can maintain safe and adequate housing for himself and O.S.; pay bills on time; cooperate with service providers; submit to drug screens; sign releases of information for mental health service providers, and follow their recommendations; not engage in criminal behaviors; and attend mental health services.

{¶10} The trial court held review hearings on April 22, 2019, November 15, 2019, March 28, 2020, and October 7, 2020. In judgment entries after each review hearing, the trial court found KCDJFS made reasonable efforts to work with the family, to prevent the removal of the child from the home, to remedy the conditions that led to the removal of the child from the home, to make it possible for the child to return home, and to establish permanency for the child. The court specifically found these reasonable efforts were: visitation, case planning, and provision of services for the parents by KCDJFS.

{¶11} Father filed a motion for custody on April 18, 2019. The trial court denied Father's motion on January 24, 2020, citing concerns about Father's mental health and the condition of his home. Father filed a second motion to return custody on July 14, 2020.

{¶12} KCDJFS filed a motion for permanent custody of O.S. on October 15, 2020. The motion outlined the issues remaining with Father, including significant home condition concerns.

{¶13} The trial court held a trial on March 26, 2021 on all pending motions. At the beginning of the trial, counsel for Father made an oral motion to appoint an attorney for O.S. because Father believed O.S.'s wishes conflicted with the GAL's recommendation.

Both the trial court and the GAL confirmed that O.S.'s wishes are not to live with Father, but to stay with the foster family. Thus, the trial court overruled Father's motion because O.S.'s wishes were consistent with the GAL's recommendation.

{¶14} Counsel for Father then requested a planned permanent living arrangement for O.S. so that she could remain in foster care and also visit with Father. However, the trial court stated that, pursuant to R.C. 2151.415, the child must be sixteen years of age or older to qualify for a planned permanent living arrangement.

{¶15} Father testified he has not lived with O.S. since she was less than one year old. When the case first started, Father had housing issues. However, he does not have those issues now, as he lives with his girlfriend, her adult sister, and her two children. If Father obtains custody of O.S., she will share a bedroom with Father's girlfriend's eighteen-year-old daughter. Father pays rent with SSI and SSD funds he receives. Father stated he will be able to support O.S. because he is on social security and he will also receive social security for O.S. once he receives custody of her.

{¶16} Father admits that when the case first started, he had mental health issues. However, Father testified he now maintains all his mental health appointments. Father is schizoaffective, and receives a medication injection every three months to maintain mental stability. Father goes to therapy with O.S.

{¶17} Father described his visits with O.S. during her therapy sessions. Father stated that any time he missed a visit, it was because he did not have transportation. At the last visit between Father and O.S., O.S. told him she did not want to come live with him. Father testified the agency told him he could not have visits at his home for several months due to COVID.

{¶18} According to Father, his criminal history consists only of misdemeanors, including a drug possession charge. Father now has a medical marijuana card.

{¶19} Father requests the court grant him custody of O.S. Father owns a vehicle, but does not have a license. Father has concerns about the number of dogs at the foster home. He believes it is in the best interest of O.S. to live with him and believes he can handle her medical issues and make sure she does well in school. He also believes O.S. would have a better connection with him because he is a biological parent. Father does not believe removing O.S. from the foster home will cause her any trauma.

{¶20} Father testified he has completed his case plan, as he has applied for public assistance, maintained housing, cooperated with his service providers, submitted to drug screens when asked, refrained from criminal behavior, and maintained mental health services.

{¶21} On cross-examination, Father stated he was not able to attend O.S.'s medical appointments because he did not have transportation, and no one prevented him from attending them. Similarly, he never asked to attend a parent-teacher conference and never asked to look at her grades. Father does not know why O.S. is in counseling.

{¶22} Robia Kaylor ("Kaylor") has been O.S.'s therapist for approximately four years. O.S.'s diagnosis is trauma-related and O.S. has issues with properly responding to stressors. Kaylor stated O.S. has made tremendous progress over the years. In the therapy with Father and O.S., there was initially very little interaction. Recently, there has been a little more interaction. Kaylor testified there appears to be some bond between them. Father did not show up for the last two visits with O.S. Father called approximately 40 minutes after the session time and asked if he had a visit.

{¶23} Kaylor believes O.S.'s trauma came from the removal from Mother's home and previous domestic violence issues not related to Father. Kaylor stated O.S. is very attached to her current foster home because she has been there since 2017. O.S. refers to them as her family.

{¶24} Counsel for KCDJFS called Celeste Conner ("Conner") as a witness. Counsel for Father objected because Conner was not provided to him in a witness list prior to the trial. When the court inquired if counsel for Father requested a witness list, counsel for Father stated he did not know. However, counsel for Father agreed that Conner has been O.S.'s foster parent for the past four years. The trial court overruled Father's objection to Conner's testimony.

{¶25} Conner described O.S. as very bright, but quiet. O.S. likes routines. Conner and her husband have three children, and currently have five foster placements besides O.S. They have a seven-bedroom home. O.S. is very bonded to her and all of her siblings. They recently discovered O.S. has frontal epileptic seizures. O.S. is on medication for the seizures. Conner tracks smaller seizures as she was taught by the neurologist. She tracks and reports them to the neurologist to determine whether the medication is working. O.S. does not speak to people unless she has a bond with them.

{¶26} O.S. has an IEP in school for speech and processing. Conner facilitates visitation with Mother, approximately once per month. Father contacts Conner sporadically through Facebook messenger. Conner told Father he could call as much as he wanted when COVID started; however, he only called once. When COVID started, Father's unsupervised home visitations stopped, but Father could still visit with O.S. outside twice per month.

{¶27}   Conner confirmed that, even if she adopted O.S., she would permit Father to visit.  Due to Father's transportation issues, Conner had to provide all transportation to and from visits.  When Father has missed a visit, O.S. does not seem upset.  O.S. has lately seemed upset because Father asks her if she wants to come live with him.

{¶28}   Conner does not believe O.S. is bonded to Father because there does not appear to be any conversation between them.  O.S. does not act afraid of Father, but seems intimidated by him.

{¶29}   Chandal Pfleiderer ("Pfleiderer") from KCDJFS has done home visits recently after another social worker was promoted to supervisor.  Pfleiderer met with Father in January of 2021.  It was an evening visit and Father did not speak much.  Rather, his girlfriend did all of the talking.  The home was cluttered, with a small pathway through the clutter.  There was a used Depends diaper laying on the bathroom floor.  Based upon her criteria for placement, she would absolutely not place a child in Father's home.  The home was extremely cluttered, there was nowhere to sit, and old pans with grease on them were on the table.

{¶30}   Pfleiderer attempted to make an unannounced visit in February of 2021, but no one answered the door.  She left a card, but no one returned her call.

{¶31}   Pfleiderer visited with O.S. at the foster home several times recently.  O.S. would not talk to her at first because she is very shy.  However, O.S. talks to foster mom and her foster siblings.  O.S. appears well-adapted in the home.

{¶32}   Dawn Parks ("Parks") was the original caseworker in the case beginning in 2016.  O.S. went into the temporary custody of the agency on July 8, 2016, and has remained in the agency's temporary custody since that time.  The original concerns in

2016 were homelessness and domestic violence between Mother and her boyfriend. At the beginning of the case, Father had no continuous contact with O.S. Mother has numerous health issues, and admits she cannot care for O.S. Mother informed Parks that she would like the agency to gain permanent custody of O.S., with continued placement with the current foster family.

{¶33} Parks testified that, overall, Father has completed some case plan activities. Initially, Father struggled to maintain housing and address his mental health needs. Early on in the case, Father did not have stable housing and was moving often. Father has maintained his current residence for approximately three years, and has obtained regular mental health treatment. However, Parks still has concerns that Father cannot maintain a clean home, lacks a good bond with O.S., and cannot provide care for O.S. on a regular basis, especially in light of her special medical needs and the necessity to consistently track her symptoms. In his current home, Parks has seen multiple issues, such as dirty diapers on the floor from the girlfriend's daughter who has a medical condition. There is always clutter around the walkways that is especially concerning for a younger child.

{¶34} Father initially had visitation at KCDJFS and eventually progressed to visits at his residence. KCDJFS or Conner provided transportation for the visits. Due to COVID restrictions, the home visits temporarily stopped. Father then had outdoor visitation. In the fall of 2020, Father's visits resumed at O.S.'s therapist's office.

{¶35} Parks has not seen recent visits between Father and O.S., but observed them previously. At the visits she observed, Father and O.S. stood there and Parks had to tell them to go start their visit. She did not observe much interaction between them.

While O.S. will play games with Father during the visits, the dialogue between Father and O.S. is very limited.

{¶36} Parks attempted to get Father to go to therapy with O.S. However, he did not agree to this until October or November of 2020. The agency offered Father assistance with transportation, such as KAT vouchers or the use of a family aide.

{¶37} Parks has seen O.S. interact with the foster family. O.S. is very comfortable in the home and is bonded to the foster family.

{¶38} Parks believes that with O.S.'s increasing medical needs that can worsen with stress, she needs a legally secure placement. Park testified the concerns that existed at the beginning the case with regards to Father such as home conditions and lack of bonding with O.S. are still ongoing. While Father has been permitted to call or text O.S., he has not done so. Parks does not have any current concerns about Father's mental health.

{¶39} Ryan Riggs ("Riggs") is a psychiatric mental health nurse practitioner. Father is his client. Father is currently diagnosed with schizoaffective disorder bipolar type, post-traumatic stress disorder, and cannabis dependence. Father is stable due to psychiatric medication.

{¶40} S.H. is Father's girlfriend. She lives with Father, her sister, and her two daughters, who are 17 and 18. Father has helped her raise her children. S.H. does not believe their house is dangerous. S.H. had a children's services case against her with regards to her children, but that case was closed in 2019. The case was substantiated for medical negligence.

{¶41} Susan Morris ("Morris") is the paternal grandmother of S.H.'s children. She has no concerns with Father or the home. Morris denied seeing any boxes in the home or on the floor. J.W. is S.H.'s daughter. Father helped her, and she has no concerns about Father. S.H.'s older daughter also testified that Father's home is clean, with no boxes or clutter on the floor.

{¶42} Mother testified that Father left their home when O.S. was six months old. Father had no contact with O.S. from then until 2016, when KCDJFS became involved. Father was not violent with Mother. Mother has concerns about O.S. going to live with Father, including his inability to take care of her, especially with her seizures. Mother stated Father can hardly take care of himself, and has no understanding of what O.S. needs. Mother does not believe Father has the mental capability to take care of O.S., even when he is on his psychiatric medication. Mother believes is it in the best interest of O.S. for KCDJFS to be granted permanent custody of O.S.

{¶43} The GAL testified there were no domestic violence concerns with Father. O.S. has been very adamant and consistent that she does not want to live with Father and feels safe where she is. The GAL thinks O.S.'s wishes are based upon the lack of cleanliness of Father's home, but also because O.S. is not comfortable around Father. The GAL has observed visits between Father and O.S. and there is no bond between them. O.S. is uncomfortable expressing herself around Father, but also does not want to hurt his feelings, so is afraid to say anything to him. The GAL does have concerns about the foster family allowing Father to visit O.S., but still believes O.S. deserves permanency. However, the foster family has never limited Father's contact so far in this case.

{¶44} The GAL agrees that limited visits and contact with Father has been an issue since COVID; however, she believes this has been an issue from the beginning of the case, prior to COVID. In her opinion, it would take more counseling and substantial contact between O.S. and Father for her to recommend Father receiving custody. If the child was comfortable in the home and spent more time there, the GAL may have been more inclined to consider recommending Father be granted custody. However, the GAL does not think that, even now, O.S would be comfortable with overnight visits with Father.

{¶45} During Father and O.S.'s most recent visit, O.S. told Father she did not want to live with him. After that, Father missed the next two visits. This concerned the GAL.

{¶46} The GAL testified O.S. is very bonded to the foster family and is comfortable in their home. The GAL believes it would be very detrimental for O.S. to be removed from the home at this point.

{¶47} The GAL believes it is in the best interest of O.S. for permanent custody to be granted to KCDJFS. Even if O.S. was not placed with this particular foster family, the GAL would still recommend permanent custody to the agency since the case has been open for four years.

{¶48} The trial court also referenced and admitted the report of the GAL. In her report, the GAL recommended that permanent custody of O.S. be granted to KCDJFS and stated permanent custody to KCDJFS would be in the best interest of O.S. As to the child's wishes, the GAL stated that O.S. is an eight-year old child who has been in the custody of the agency since she was approximately three years old. O.S. has expressed consistently that she likes to visit Father, but is adamant that she does not want to live with him. O.S. is afraid to hurt Father's feelings, but is learning through counseling to

advocate for herself.  Mother agrees with KCDJFS having permanency custody, but filed her own motion in case permanent custody was not granted to the agency.

{¶49}  The GAL listed the following concerns in her report about returning the child to her parents:  O.S. is bonded to the foster family; O.S. has been in agency custody for more than four years; Father does not have overnight parenting time; Father does not have a driver's license and relies on others outside of the home for transportation; removal of O.S. from the foster home would require her to change schools, which would be detrimental; history of homelessness; conditions of Father's home; and long duration of involvement with the agency with little progress.

{¶50}  The trial judge completed an in-camera interview with O.S.  O.S. told the judge she would like to maintain some contact with Father, but did not want to live with him.  O.S. stated that one-time, Father did not feed her during a visit.

{¶51}  The trial court issued a detailed judgment entry on May 11, 2021.

{¶52}  As to Father's request to appoint an attorney advocate for O.S., the court stated it inquired of the GAL as to the wishes of O.S. as compared to the recommendation of the GAL.  The court found the recommendations align and do not conflict.  Thus, the trial court denied the motion to appoint attorney advocate.

{¶53}  The trial court then went through the testimony in the case in detail.  The trial court also stated that the child's wishes, as expressed to the court during an in-camera interview, are in line with O.S.'s request of the GAL to maintain contact with her parents, but not reside with them.  O.S. told both the court and the GAL that Father neglects her, and she is uncomfortable with the idea of living with him.

{¶54} The trial court found O.S. has been in the temporary custody of KCDJFS for more than twelve months of a consecutive twenty-two-month period. Further, that O.S. cannot be placed with either parent within a reasonable amount of time. The trial court stated the efforts made by KCDJFS were reasonable, appropriate, and consistent with the child's best interest. Additionally, KCDJFS used reasonable efforts to prevent the removal of the child, to remedy to conditions that led to removal, and to make it possible for the child to return home. Specifically, these reasonable efforts consisted of case planning, referrals to services, and facilitation of visitation.

{¶55} The trial court stated it considered the best interest factors contained in R.C. 2151.414(D), and found it is in the child's best interest to grant permanent custody to KCDJFS.

{¶56} Father appeals the May 11, 2021 judgment entry of the Knox County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶57} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶58} "II. THE COURT ERRED IN ALLOWING THE MOTION TO PROCEED OR GRANTING THE MOTION DUE TO LACK OF REASONABLE EFFORTS.

{¶59} "III. THE RIGHTS OF THE CHILD, PARENTS, AND FAMILY WERE VIOLATED AS THEY WERE NOT GIVEN COUNSEL.

{¶60} "IV.THE COURT ABUSED ITS DISCRETION IN ALLOWING THE TESTIMONY OF A WITNESS WHO WAS NOT PROPERLY DISCLOSED."

*Permanent Custody*

{¶61} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶62} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent and credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶63} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶64} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court

schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency.

{¶65} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶66} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

{¶67} In his first assignment of error, Father makes two separate arguments. First, he contends the elements of R.C. 2151.414(B)(1)(a) and (E) were not met because the finding that O.S. could not or should not be placed with Father within a reasonable time was not proven by clear and convincing evidence.

{¶68} We first note that the trial court determined, pursuant to R.C. 2151.414(B)(1)(d), the child has been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. Parks testified O.S. was placed into the temporary custody of KCDJFS on July 8, 2016, and was continuously in the temporary custody of KCDJFS until March 26, 2021, the date of the trial. Thus, O.S. has been in the custody of the agency for more than twelve months out of the last twenty-two months.

{¶69} As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

{¶70} Because Father has not challenged the twelve of twenty-two-month finding, we would not need to address the merits of Father's claim with regards to the trial court's determination that O.S. could not or should not be placed with Father within a reasonable time. However, even if we consider Father's argument, the trial court did not commit error in determining the child cannot be placed with Father at this time or within a reasonable period of time. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶71} A review of the record supports the trial court's conclusion that the child cannot be placed with Father within a reasonable time. When Pfleiderer visited Father's home in January of 2021, the conditions were poor, with nowhere to sit and dirty diapers on the floor. Pfleiderer would not consider placing O.S. in Father's home due to the home conditions. Father failed to respond to Pfleiderer's request to call to schedule a home visit in February of 2021.

{¶72} Parks explained concerns remain that were present at the beginning of the case. For example, Father still cannot maintain a clean home, he lacks a bond with O.S., and he cannot provide care for O.S. on a regular basis, especially in light of her medical condition. The GAL also believes Father's home condition and lack of bonding with O.S. are concerns that still remain. She would not recommend overnight visitation with Father even after four years of agency involvement. The GAL stated there has been a long duration of agency involvement with O.S. with little progress by Father.

{¶73} Despite KCDJFS informing Father about their concern with the lack of bonding between him and O.S., for a month prior to the trial in this case, Father did not attend visitation. This lack of contact began immediately after a visitation during which O.S. told Father she did not want to live with him.

{¶74} Father's lack of knowledge about O.S., even after four years of agency involvement, is evident in his testimony. He could not identify what size clothing O.S. wears, has not asked to attend to any medical or educational appointments, and is unaware of why O.S. is in counseling even though he attended several sessions with her.

{¶75} Though Father contends O.S. could have been placed with him "in a few months" without visitation being disrupted by COVID visitation restrictions, the evidence at trial does not support his contention.

{¶76} Despite the fact that Father was limited for several months in his face-to-face visits with O.S., he was offered unlimited phone and virtual contact with O.S. However, he only called once during this time. Additionally, face-to-face visits started outdoors, where Father could have contact with O.S. several times per month. During these visits, Parks observed that there was little interaction between Father and O.S.

{¶77} The GAL explained that while the few months of COVID visitation restrictions may have impacted Father, the greater impact on the lack of bond between Father and O.S. is the lengthy period of time he did not have contact with O.S. from when she was six months old to the beginning of the case in 2016, and his sometimes-inconsistent visitation since 2016. Further, the GAL noticed a lack of bonding and interaction between O.S. and Father during visits prior to and after the COVID restrictions. Parks described how she repeatedly asked Father to be involved in therapy with O.S. during the pendency of the case. However, he chose not to participate until October or November of 2020, after O.S. had been in agency custody for over 50 months.

{¶78} As recently as a month before the trial in this case, Father twice failed to appear for visitation with O.S. after she told him she did not want to live with him. Parks, Pfleiderer, and the GAL all testified to concerns remaining with Father at the time of trial. There is no evidence these issues could be resolved in "a few months," particularly given the fact that they could not be resolved in the years prior to or the months after the COVID visit limitations.

**{¶79}** Father argues KCDJFS did not make "reasonable case planning and diligent" efforts to assist Father in remedying the problems existing at beginning of the case. Father has also assigned this as a separate assignment of error. As detailed in our analysis of Father's second assignment of error, we find this argument to be not well-taken.

**{¶80}** Additionally, Father argues the trial court's determination that the best interest of the child would be served by the granting of permanent custody to KCDJFS was against the manifest weight and sufficiency of the evidence. Father cites to the testimony that O.S. wished to maintain contact with Father, the fact that he completed his case plan, and his testimony that due to his bond with O.S., it is in the best interest of O.S. to stay with her biological family.

**{¶81}** We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of the child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1799973 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

**{¶82}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard

for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶83} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. *In re Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.*

{¶84} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

{¶85} We find the trial court did not commit error in finding that granting permanent custody to KCDJFS was in the best interest of O.S.

{¶86} Mother testified Father is not capable of taking care of O.S. because he can "hardly take care of himself." Mother does not believe Father has any understanding of

what O.S. needs.  Mother believes it is in the best interest of O.S. for KCDJFS to be granted permanent custody of O.S.

{¶87}  The GAL stated it is in the best interest of O.S. for permanent custody to be granted to KCDJFS.  Even if O.S. was not with this particular foster family, the GAL believes it still would be in O.S.'s best interest for KCDJFS to be granted permanent custody.  The GAL stated O.S. deserves permanency and stability, particularly with her recently diagnosed seizure condition.

{¶88}  O.S.'s therapist testified O.S. is very attached to the foster home because she has been there since 2017, and refers to them as her family.  Conner stated O.S. is very bonded with their family.   Pfleiderer stated O.S. is well-adapted in the foster home.  According to the GAL, O.S. is very bonded to the foster family, and it would be very detrimental to remove her from their home.

{¶89}  While O.S. does not want to hurt Father's feelings and expressed a desire to maintain contact with him, O.S. was adamant to both the GAL and the trial court that she does not want to live with Father.  She does not feel comfortable in his home.  O.S. was not upset when Father recently missed his visitation with her.  The GAL and Parks do not believe O.S. has any bond with Father.  This lack of bonding is particularly concerning because O.S. is hesitant to express her needs and has medical conditions that require close monitoring.

{¶90} Father contends he has completed all his case plan requirements. However, the successful completion of a case plan is not dispositive on the issue of reunification.  *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604.  While it may be in Father's best interest to complete the case plan, this is only one factor for a trial

court to consider what is in the best interest of the child. *In the Matter of D.P. and G.P.*, 5th Dist. Stark No. 2010CA00348, 2011-Ohio-1907.

{¶91} Where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *In the Matter of A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481. In this case, while Father has substantially completed his case plan, Parks, Pfleiderer, and the GAL described how Father failed to alleviate the risks present at the time of removal and that the same concerns present at the beginning of the case still continue today.

{¶92} We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to KCDJFS is in the best interest of the child is supported by competent and credible evidence.

{¶93} Father's first assignment of error is overruled.

II.

{¶94} In his second assignment of error, Father argues KCDJFS did not make reasonable efforts to assist Father in remedying the problems leading to the removal of O.S.; thus, the motion for permanent custody should be denied as not ripe.

{¶95} First, the Ohio Supreme Court has held the trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; see also R.C. 2151.419. The trial court

is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; *In the Matter of L.J.*, 5th Dist. Licking No. 2019 CA 0079, 2019-Ohio-5231. In this case, the record reflects that the juvenile court made reasonable-efforts findings at various points throughout the case for the child, as demonstrated in judgment entries after the adjudicatory, dispositional, and review hearings held on October 10, 2018, November 5, 2018, April 22, 2019, November 15, 2019, March 28, 2020, and October 7, 2020. Consequently, the agency did not need to prove at the permanent custody hearing that it made reasonable reunification efforts. *Id.*

{¶96} In its March 26, 2021 judgment entry, the trial court found KCDJFS made reasonable efforts to reunify the family.

{¶97} Father contends the efforts of KCDJFS were not reasonable because they made no effort to include him in medical planning, counseling for O.S., or school, despite his requests. Further, that KCDJFS failed to use reasonable efforts to help with the bonding issues between O.S. and Father. Specifically, Father alleges KCDJFS did not expend reasonable efforts because they suspended his face-to-face visitation for a period of time during the height of the COVID pandemic.

{¶98} We find there is competent and credible evidence to confirm that KCDJFS made reasonable efforts to assist Father in eliminating the need for the continued removal of the child.

{¶99} Parks testified regarding efforts made by the agency during their 56-month involvement with the family, including case management services, foster placement, counseling for O.S., coordination between O.S.'s counselor and Father, and visitation between O.S. and Father. Conner and/or KCDJFS provided all transportation to and from visits because Father does not have a driver's license. KCDJFS also provided Father with KAT transportation vouchers and the use of a family aide from KCDJFS. The month prior to trial, Pfleiderer attempted to visit Father's home, but he was not there and never returned her call despite her leaving her card asking him to do so.

{¶100} With regard to COVID-visitation restrictions, during the months that there was no face-to-face contact, the agency permitted Father to call, text, or virtually contact O.S. as much as he wanted. During this time, he only called O.S. once. Additionally, within a few months, KCDJFS approved resumption of face-to-face outdoor visits several times per month. However, during these visits, O.S. and Father had very little interaction. Though Father did start attending counseling sessions with O.S. in the fall of 2020, he missed the two visits prior to the March 2021 trial.

{¶101} Though Father argues KCDJFS failed to inform him about medical appointments or school records for O.S., Parks testified he never requested this information. Father himself testified that he never asked to attend a parent-teacher conference or to look at O.S.'s grades. Father stated no one prevented him from attending O.S.'s medical appointments, and he was not able to attend them because he did not have transportation. Additionally, Parks, the GAL, and Pfleiderer all testified to the efforts they went through to attempt to assist in bonding Father with O.S.

{¶102} The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In the Matter of J.H.*, 5th Dist. Guernsey No. 19CA000025, 2019-Ohio-5184. We find there is competent and credible evidence to support the trial court's determination that KCDJFS' efforts were reasonable and diligent under the circumstances of the case.

{¶103} Father's second assignment of error is overruled.

III.

{¶104} In his third assignment of error, Father contends the trial court committed error when it failed to appoint O.S. an attorney advocate separate from the GAL because a conflict existed between O.S.'s wishes and the recommendation of the GAL.

{¶105} Superintendence Rule 48.02(D)(1) provides that, in abuse, neglect, and dependency cases, "a court shall appoint a separate attorney to represent a child * * * [in] cases in which the wishes of the child differ from the recommendations of the guardian ad litem." Similarly, Juvenile Rule 4(C) states that, "if a person is serving as guardian ad litem for a child * * * and the court finds a conflict exists between the role of the Guardian ad litem and the interest or wishes of the child * * *, the court shall appoint counsel for the child * * *."

{¶106} The Ohio Supreme Court has held that a trial court should determine, on a case-by-case basis, whether the child actually needs independent counsel, "taking into account the maturity of the child and the possibility of the [GAL] being appointed to represent the child." *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110. Ohio courts have concluded "the appointment of independent counsel is warranted

when a child has 'repeatedly expressed a desire' to remain or be reunited with a parent but the child's [GAL] believes it is in the child's best interest that permanent custody be granted to the state." *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600 through 05CA609, 2006-Ohio-1965.

{¶107} We find the record does not reveal any conflict giving rise to any need for new, separate counsel. The GAL stated that O.S. was consistently "adamant" that she did not want to live with Father. The trial court confirmed this was the case during an in-camera interview with O.S. Additionally, Father confirmed in his testimony that O.S. told him she did not want to live with him.

{¶108} In this case, unlike the cases cited by Father, the record does not reflect that O.S. consistently and repeatedly expressed a strong desire to live with Father in his home. Accordingly, we find the trial court did not commit error in failing to appoint independent counsel for O.S. on the date of the hearing.

IV.

{¶109} In his final assignment of error, Father argues the trial court committed error in allowing the testimony of Conner, the foster mother of O.S., because she was not properly disclosed as a witness prior to trial.

{¶110} First, we find Father has failed to demonstrate that Conner was not properly disclosed as a witness. Father cites Juvenile Rule 24(A) in support of his argument. The rule provides, "upon written request, each party of whom discovery is requested shall, to the extent not privileged, produce promptly * * * (1) the names and last known addresses of each witness to the occurrence that forms the basis of the charge or defense." Counsel for Father could not remember at the hearing whether he made a written request for

discovery and/or a witness list. Upon our review of the record, we find no written discovery request made by Father. Accordingly, Father did not properly make a "written request" as required by Juvenile Rule 24(A). Additionally, both Father and his counsel agreed that Conner has been the foster mother for O.S. for four years.

{¶111} A trial court has the discretion to determine what sanction should be imposed for a discovery violation, and a reviewing court may reverse only on a finding of an abuse of discretion. *Nakoff v. Fairview General Hosp.,* 75 Ohio St.3d 254, 662 N.E.2d 1 (1996). The trial court may exclude the testimony of an undisclosed witness as a sanction when the failure to disclose caused unfair surprise with prejudice to the opposing party. *Anderson v. Lorain County Title Co.*, 88 Ohio App.3d 367, 623 N.E.2d 1318 (9th Dist. Lorain 1996).

{¶112} Father fails to demonstrate any unfair surprise in this case. Father was aware of Conner's involvement in the case for the past four years. He contacted Conner directly to confirm visitation times. He had ample opportunity to interview her if he wanted.

{¶113} Additionally, Father does not allege or demonstrate on appeal how Conner's testimony was prejudicial to him. The information she testified to, such as medical issues and visitation issues, were disclosed and discussed with Father during annual review hearings. Conner's testimony was corroborated by others, including Father himself. *State v. Ruddock*, 5th Dist. Licking No. 11-CA-94, 2012-Ohio-2711; *State v. Larkins*, 5th Dist. Richland No. 2007-CA-0082, 2008-Ohio-5982.

{¶114} Father's fourth assignment of error is overruled.

{¶115} Based on the foregoing, Father's assignments of error are overruled.

{¶116} The May 11, 2021 judgment entry of the Knox County Court of Common Pleas, Juvenile Division, is affirmed.

By: Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur